## PENCE *v*. WESSELS.

1. BANKS AND BANKING—JOINT ACCOUNTS—PRESUMPTION AS TO OWNERSHIP.

   The creation of a joint bank account does not conclusively establish title in the surviving depositor after the death of one of the depositors but merely creates a presumption of ownership in the survivor rebuttable by competent evidence to the contrary (3 Comp. Laws 1929, § 12063, as amended by Act No. 286, Pub. Acts 1937).

2. EVIDENCE—PRESUMPTIONS.

   A rebuttable or prima-facie presumption has no weight as evidence; it may establish a prima facie case, but, if challenged by rebutting evidence, the presumption cannot be weighed against the evidence, and upon introduction of supporting evidence, the actual evidence introduced is then weighed without giving any evidential force to the presumption itself.

3. BANKS AND BANKING—JOINT ACCOUNTS—INTENT—EVIDENCE.

   Statements made by decedent after joint bank accounts were made with defendant would not be admissible to show intent with which such accounts were opened if objection to such testimony is made (3 Comp. Laws 1929, § 12063, as amended by Act No. 286, Pub. Acts 1937).

---

Ineffectiveness of gift for want of delivery, see Restatement, Restitution, § 164, comment a.

4. WITNESSES—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED
—DEFINITION OF OPPOSITE PARTY.

An opposite party, within the meaning of the statute barring testimony of opposite parties as to matters equally within the knowledge of a deceased person, is one whose personal and financial interests, either immediate or remote, are antagonistic to the like interests of the protected party (3 Comp. Laws 1929, § 14219).

5. SAME—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED—
DISINTERESTED THIRD PARTIES.

Statute barring testimony of opposite parties upon matters which must have been equally within the knowledge of a deceased person does not exclude the testimony of third parties as to matters equally within the knowledge of the deceased and admission of testimony of a disinterested third party as to such matters does not. permit admission of the testimony of a litigant whose interests are adverse to the estate of the deceased person (3 Comp. Laws 1929, § 14219).

6. BANKS AND BANKING—JOINT ACCOUNTS—INTENT—EVIDENCE.

While statements to a disinterested witness, not made in presence of codepositor, allegedly made by decedent before he opened a joint bank account with defendant, would be admissible to show his intention with reference to the deposits when made to rebut statutory presumption of ownership in defendant, his statements made after he opened the account when he referred to disposition of his property by will to others was not admissible on issue of intent since they were self-serving and hearsay statements (3 Comp. Laws 1929, § 12063, as amended by Act No. 286, Pub. Acts 1937).

7. SAME—JOINT ACCOUNTS—PRESUMPTION AS TO OWNERSHIP—EVIDENCE.

The statutory presumption as to survivor's ownership of a joint bank account disappears upon the reception of testimony and cannot be weighed in the balance in determining the weight of the evidence (3 Comp. Laws 1929, § 12063, as amended by Act No. 286, Pub. Acts 1937).

8. SAME—JOINT ACCOUNTS—GIFTS—DELIVERY OF BANKBOOKS.

Where decedent opened several joint bank accounts in the name of himself and defendant but no proof of delivery of the bankbooks to defendant during depositor's lifetime was made, it would not be considered that either a gift *inter vivos* or *causa mortis* was established, especially in the absence of a claim thereof by defendant.

9. APPEAL AND ERROR—CHANCERY CASES—DE NOVO REVIEW.

While Supreme Court hears chancery cases *de novo,* it does give consideration to the greater opportunity afforded the trial court who sees and hears the witnesses, and does not reverse unless it would have reached the opposite conclusion on weighing the testimony.

10. BANKS AND BANKING—JOINT ACCOUNTS—INTENT AS TO OWNERSHIP—EVIDENCE.

In chancery suit by executor of estate of deceased who had opened several joint bank accounts with defendant, to recover proceeds thereof from defendant, in which no question was ever raised as to adequacy of plaintiff's remedy at law, evidence *held,* sufficient to establish that such accounts were so established merely for the convenience of the deceased and not to give defendant an interest therein (3 Comp. Laws 1929, § 12063, as amended by Act No. 286, Pub. Acts 1937).

Appeal from Oakland; Doty (Frank L.), J.   Submitted January 8, 1948.   (Docket No. 40, Calendar No. 43,789.)   Decided February 16, 1948.

Bill by David C. Pence, executor of the estate of Norman McPherson, deceased, against J. Joe Wessels for accounting of funds in joint deposits.   Decree for plaintiff.   Defendant appeals.   Affirmed.

*David C. Pence* (*John Anderson,* of counsel), for plaintiff.

*Robert D. Heitsch* and *Franklin E. Morris,* for defendant.

BOYLES, J.   Plaintiff, as executor of the estate of Norman McPherson, deceased, filed a bill of complaint in the circuit court for Oakland county in chancery to recover from the defendant the proceeds of two joint bank accounts standing in the name of Norman McPherson and the defendant at the time

of McPherson's death. No question has been raised that the plaintiff has an adequate remedy at law. Issue was joined in the case, proofs taken, and the trial court entered a decree:

"That the joint bank accounts  *  *  *  were so established merely for the convenience of the above deceased and that the statutory presumption relative to joint bank accounts has been overcome by testimony offered by the plaintiff, and further that the defendant herein has in no manner established any interest in, or right to said accounts,  *  *  *  that the plaintiff as executor of said deceased's estate is entitled thereto, said accounts being in the amount of $5,646, and it further appearing said defendant, J. Joe Wessels, has heretofore withdrawn the funds in said accounts.  *  *  *

"It is ordered, adjudged and decreed that the joint bank accounts established by the above named deceased, Norman McPherson,  *  *  *  be and the same hereby are funds and property of the estate of the above deceased."

The defendant, for reversal, claims that the plaintiff did not "overcome the presumption of the statute;" that the result reached was contrary to the law and the evidence; and that certain evidence of statements alleged to have been made by the deceased to other persons not in the presence of the defendant were inadmissible, erroneously received, and relied upon by the trial court.

That part of the joint bank account statute material to the issue is as follows:

"When a deposit shall be made, in any bank by any person in the name of such depositor or any other person, and in form to be paid to either or the survivor of them, such deposits thereupon and any additions thereto, made by either of such persons, upon the making thereof, shall become the property of such persons as joint tenants, and the same to-

gether with all interest thereon, shall be held for the exclusive use of the persons so named and may be paid to either during the lifetime of both, or to the survivor after the death of one of them, and such payment and the receipt or acquittance of the same to whom such payment is made shall be a valid and sufficient release and discharge to said banking institution for all payments made on account of such deposits prior to the receipt by said bank of notice in writing not to pay such deposit in accordance with the terms thereof. * * *

"The making of the deposit in such form shall, in the absence of fraud or undue influence, be prima facie evidence, in any action or proceeding, to which either such banking institution or surviving depositor or depositors is a party, of the intention of such depositors to vest title to such deposit and the additions thereto in such survivor or survivors." 3 Comp. Laws 1929, § 12063, as amended by Act No. 286, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 12063, Stat. Ann. 1943 Rev. § 23.303).

The concluding paragraph of the above section was added by Act No. 286, Pub. Acts 1937. However, in a case involving the creation of a joint bank account under the statute in effect before said paragraph was added (See 3 Comp. Laws 1929, § 12063), this Court had held as follows:

"The creation of a joint bank account does not conclusively establish title in the surviving depositor after the death of one of the depositors but merely creates a presumption of ownership in the survivor rebuttable by competent evidence to the contrary (3 Comp. Laws 1929, § 12063)." *Van't Hof* v. *Jemison* (syllabus), 291 Mich. 385.

The above conclusion has been followed in subsequent decisions.

"A rebuttable or prima facie presumption has no weight as evidence; it may establish a prima facie case, but, if challenged by rebutting evidence, the

presumption cannot be weighed against the evidence, and upon introduction of supporting evidence, the actual evidence introduced is then weighed without giving any evidential force to the presumption itself." *Hill* v. *Hairston* (syllabus), 299 Mich. 672.

To the same effect, see *Allstaedt* v. *Ochs,* 302 Mich. 232; *Manufacturers National Bank* v. *Schirmer,* 303 Mich. 598; *Mitts* v. *Williams,* 319 Mich. 417.

Appellant relies on *Lau* v. *Lau,* 304 Mich. 218. While some statements therein seemingly tend to support appellant's position, contrary to the above conclusions of law, they must be read in connection with other statements of the law of the case, and the case is distinguishable from the case at bar by the facts. The controlling question in the instant case is the same as the controlling question in *Mitts* v. *Williams, supra,* stated therein as follows:

"The question in the instant case is therefore whether the competent evidence offered by plaintiff on the trial was of such character as to establish with the requisite degree of certainty that the deposit was made in the names of the parties jointly for the purpose claimed by plaintiff, and with the intention and understanding that defendant should have no interest therein."

Defendant J. Joe Wessels, to support his claim at the hearing before the trial court, relied on the "presumption" created by the statute above quoted, and the testimony of one Steinbaugh, a business associate of the defendant as well as a friend of the deceased, who testified (without objection as to materiality) as follows:

"My full name is Albert Steinbaugh. I live at Fairwood avenue, Pleasant Ridge. My business is undertaking, funeral directing. I am associated with Mr. Wessels. Our business is located at 23257

Woodward avenue, Ferndale. I knew Norman Mc-
Pherson in his lifetime. I presume I had known him
close to 25 years. In the summer of 1945 he didn't
discuss with me any of his business affairs a great
deal. Norman wasn't so very much of a hand to say
very much about his business. He had talked with
me about making a joint bank account. That con-
versation took place at my office. I don't know
that I can fix the time and date approximately when
that took place, only I would imagine it was some-
time in August. * * *

"*Q.* Did the question of the joint bank account
come up later than that?

"*A.* Yes.

"*Q.* When did he talk about a joint bank ac-
count?

"*A.* Well, it was as I recall after his brother was
buried, after the funeral. I don't know how soon
afterwards.

"*Q.* What did he say?

"*A.* Why he said 'I made up my mind to go to
Florida this winter and I want to put some money
in the bank and when I get down there if I need any
I want you to send me some.'

"*Q.* What did you tell him?

"*A.* I says 'Mac, I can't help you because I am
figuring on going to Florida myself this winter' so
that was all the conversation there was.

"I later learned he had made arrangements with
Mr. Wessels about a joint bank account. I was pres-
ent at a conversation between Mr. Wessels and Mr.
McPherson about the joint bank account.

"*Q.* When was that?

"*A.* Well, later, I would say about two weeks
after he came to me and wanted to put it jointly with
me—I would say it was about two weeks.

"*Q.* Can you give us any idea as to how long that
was before he was killed?

"*A.* I think—that's pretty hard for anyone to
say.

"*Q.* It was during the summer of 1945?

"*A.* Oh, yes, sure.

"*Q.* Where did the conversation take place?

"*A.* In the office.

"*Q.* Tell us what was said?

"*A.* Well, as I recall it, Mac told me he had put it in jointly with Joe and Joe happened to be there in the office too and these may not be the exact words but as near as I can recall Wessels asked him 'What will I do with the balance if you should die or anything' and he said 'I'd just as soon you would have it as anybody else.'"

Inasmuch as the above alleged statements were made by Mr. McPherson *after* the joint bank accounts in question were made, the testimony would have been inadmissible, under the ruling in *Mitts* v. *Williams, supra,* if objection thereto had been made.

On behalf of the plaintiff, the following facts and circumstances are undisputed:

Norman McPherson was an elderly widower, without children. His next of kin were a brother George and a sister Mary, both unmarried, residing in Ontario, Canada. In 1942 he executed a will bequeathing his property to his brother and sister, or to the survivor in the event one of them predeceased him. Plaintiff David C. Pence was named therein as executor. The deceased's brother George died in July, 1945, and decedent himself was killed in an automobile accident in Ontario on September 27, 1945, while returning from a visit to his sister. The aforesaid will was duly admitted to probate in Oakland county, and David C. Pence confirmed by the court as executor. Thereupon this bill in chancery was filed by said executor to recover the joint bank deposits which are the subject matter on this appeal.

At the hearing, the trial court admitted as evidence the testimony of a disinterested witness, as to statements made to her by the deceased both before

and after the joint bank accounts were created, not in the presence of the defendant, concerning his money and his bank accounts. Appellant insists that this evidence was hearsay and incompetent, and on that ground appellant mainly relies for reversal. There is no doubt but that the result reached by the trial court was to some extent based on the testimony which the appellant claims should not have been received.

In part, appellant relies on cases where testimony was excluded on the ground it was equally within the knowledge of the deceased. But the witness whose testimony appellant would exclude, under that rule, was not an "opposite party" within the inclusion of the statute, nor was such witness a surviving partner, an agent, or one who was in any way interested in the subject matter of the controversy. See 3 Comp. Laws 1929, § 14219 (Stat. Ann. § 27.914).

"An opposite party, within the meaning of the statute barring testimony of opposite parties as to matters equally within the knowledge of a deceased person, is one whose personal and financial interests, either immediate or remote, are antagonistic to the like interests of the protected party (3 Comp. Laws 1929, § 14219)." *Salsbury* v. *Sackrider* (syllabus), 284 Mich. 493.

"Statute barring testimony of opposite parties upon matters which must have been equally within the knowledge of a deceased person does not exclude the testimony of third parties as to matters equally within the knowledge of the deceased and admission of testimony of a disinterested third party as to such matters does not permit admission of the testimony of a litigant whose interests are adverse to the estate of the deceased person (3 Comp. Laws 1929, § 14219)." *In re Einfeldt's Estate* (syllabus), 286 Mich. 537.

The record discloses that the testimony of the disinterested witness which appellant claims was inadmissible showed statements made by the deceased to this witness not in the presence of the defendant, both before and after the deceased had made the joint bank account deposits here in question. The trial court received this testimony for the purpose of showing the decedent's intentions and state of mind at the time the joint bank accounts were created, to rebut the statutory presumption. Said witness testified that the deceased, in discussing his bank accounts with her, made reference to his intention to leave his property to his sister Mary. To the extent that this testimony purported to disclose statements allegedly made by the deceased not in the presence of the defendant, *after* the joint bank deposits were made, and decedent's statements made at that time referring to his will and his intentions in disposing of his property thereunder, the testimony of this witness was not admissible to show his intentions with reference to the deposits at the time they were made. On the other hand, much of the testimony adduced from this witness was admissible. It was proper to show the decedent's intentions and arrangements prior to his making the joint bank accounts, to rebut the presumption of joint ownership between the deceased and the defendant. *Mitts* v. *Williams, supra.*

We have difficulty in determining from the record to what extent the testimony of said witness had reference to inadmissible statements made by the deceased subsequent to his making the joint bank deposits. The bank account books were not offered in evidence, but there is no doubt as to the dates when the joint accounts were made. The bill alleges, and the defendant's answer admits, that on July 10, 1945, the deceased deposited $3,000 in the Manufacturers' National Bank of Detroit, Highland Park

branch, in a joint bank account with the defendant J. Joe Wessels, and that on July 11, 1945, he deposited $2,646 in the Wayne-Oakland Bank in the city of Royal Oak, in a joint account with the defendant. But the record is not plain as to the time of the several conversations between said witness and the decedent, whether they were before or after the above dates.

The controlling problem is to ascertain from the record before us the admissible testimony and from that source determine whether such testimony, added to the facts and circumstances of the case, when weighed against the testimony hereinbefore referred to adduced by the defendant, sufficiently proves plaintiff's claim that the defendant has no right to the joint bank accounts. The statutory presumption disappeared when the testimony was received, and no longer weighs in the balance in determining the weight of the evidence. Nor do we need to consider those situations where the defendant would be entitled to the joint bank accounts as a gift *inter vivos, Lumberg* v. *Commonwealth Bank,* 295 Mich. 566, or a gift *causa mortis, Loop* v. *DesAutell,* 294 Mich. 527. The defendant makes no such claim, and there is no proof of a delivery of the bankbooks during the lifetime of the decedent. See *Molenda* v. *Simonson,* 307 Mich. 139.

Decision in the instant case hinges on the admissible testimony of one Mrs. Shiflett, a widow with whom Norman McPherson roomed and boarded beginning in May, 1945, about two months before he made the joint bank account deposits. He was unemployed, semiretired, and "around the house a good bit." Material to the issue here, she testified as follows:

"After he came to live with me I discussed with him business affairs. He started those conversations.

"*Q.* And how long after he came to live at your house did these conversations you tell about—mention—take place, when did they start?

"*A.* Immediately.

"*Q.* Immediately after he got there?

"*A.* Before he came there.

"*Q.* They were discussed before he came?

"*A.* Yes.

"*Q.* Had you—did you ever discuss at any time anything about any money he had?

"*A.* Yes. * * *

"*Q.* What was the subject matter of your first discussion about Mr. McPherson's account?

"*Mr. Heitsch* (defendant's attorney): I object to the first discussion as not being sufficient identification of time and place.

"*The Court:* Fix the time and place.

"*Q.* When did you have your first discussion? You say he came in May?

"*A.* Yes.

"*Q.* Do you remember roughly the date?

"*A.* It was just after V. J. day.

"*Q.* Pardon?

"*A.* Just after the war was over, during the time I was helping to sell his furniture. I don't remember the date. It was somewhere around V. day.

"*Q.* How long after that time did you have the discussion?

"*A.* Immediately. He had this money in the bank and wanted to take part of it to his sister. She was kind of taking care of his affairs and he went to see his sister and she could not take care of it, so he asked me if I might.

"*Q.* Asked you if you would take care of it for him?

"*A.* Yes, he did.

"*Q.* Your response to that was what?

"*A.* No.

"*Q.* Following that discussion did you have any further discussion with him about his bank account?

"*A.* He asked me—he said he didn't want to leave it all in one bank and what I would do if it was mine and I said I would take part of it and put it in a couple of banks and he said which ones would you go to and I said I would take some to the National Bank at Highland Park and some to the Wayne-Oakland and he had some in Ferndale. Afterwards he told me he had.

"*Q.* Did you have a further discussion—anything about his establishing of these accounts?

"*A.* Yes, he told me he would like to have Mr. Steinbaugh take care of it. He wanted to go to Florida and wanted somebody to cash checks and deposit them and send money when he needed it after he got there if he got out of money and he wanted somebody to draw money and take care of his bills and expenses and he went to see Mr. Steinbaugh and I think Mr. Steinbaugh refused and later he came back—he came back several days later and said to me—showed me the books and told me Joe had taken it—that would be Mr. Wessels.

"*Q.* At this time did he say anything about what Mr. Wessels was to do with the money?

"*Mr. Heitsch:* I object to that as incompetent, irrelevant and immaterial."

Under the rule laid down in *Mitts* v. *Williams, supra,* the objection should have been sustained, and we do not consider the further testimony of this witness. Statements made by Mr. McPherson after the joint bank deposits had been made, not in the presence of the defendant, were self-serving statements, hearsay, and inadmissible to show the state of mind and the intent of the deceased at the time the joint deposits were made. The same rule applies to statements made by the deceased after the joint bank accounts were deposited, to the effect that he then said that his sister was to have his property. But in regard to the time when some of such statements were made, this witness testified:

"*Q.* Did you have any such conversation between May and the latter part of July, when he left?

"*A.* Yes.

"*Q.* Was that—when was that relative to the establishment of this bank account we are talking about?

"*A.* It was before and after. He always told me he wanted her to have it.   *   *   *

"*Q.* Did you have any conversation with Mr. McPherson relative to what Mr. Wessels had told him about establishing this joint bank account?

"*A.* He said—he called him Joe—he said Joe said he would have to sign with him in order to get the money to send to him or pay his bills.

"*Q.* He had been talking about going to Florida?

"*A.* Yes, he had wrote and engaged a room."

The circuit judge who saw and heard the witnesses concluded that the joint bank accounts were created merely for the convenience of the deceased, without any intention that the defendant should become entitled to the same. While this Court hears chancery cases *de novo,* we give consideration to the greater opportunity afforded the trial court who sees and hears the witnesses, and we do not reverse unless we would have reached an opposite conclusion. On weighing the testimony, we cannot say that the court reached the wrong result. We conclude that the evidence entitled to consideration is of sufficient strength and clarity to establish plaintiff's claim as to the intention and understanding of the parties with reference to the deposits. It follows that plaintiff is entitled to a decree for the amounts withdrawn by the defendant and the trial court so held.

The decree is affirmed, with costs to appellee.

BUSHNELL, C. J., and SHARPE, REID, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.