# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Estate of EDWARD SADORSKI, SR.,
Deceased.

---

ANN SADORSKI,

        Appellant,

v

KAREN MAHER, EDWARD SADORSKI, JR.,
KENNETH SADORSKI, AND ESTELLE
SADORSKI,

        Appellees.

UNPUBLISHED
July 20, 2017

No. 332416
Macomb Probate Court
LC No. 2014-214780-DE

---

Before: Before: GLEICHER, P.J., and M. J. KELLY and SHAPIRO, JJ.

PER CURIAM.

A Michigan statute prescribes that a deposit made in a jointly owned bank account with the right of survivorship constitutes prima facie evidence that the depositor intended to vest title to the money in the survivor. The common law permits the introduction of extrinsic evidence to prove the contrary: that the account was established solely for convenience and not to benefit solely the surviving joint owner. "Reasonably clear and persuasive proof" is required to overcome the statutory presumption. The question presented is whether the probate court correctly concluded that the evidence presented met this burden.

Our standard of review foretells the answer. When a probate court sits without a jury, we consider only whether its findings are clearly erroneous. *In re Estate of Bennett*, 255 Mich App 545, 549; 662 NW2d 772 (2003). The record evidence is largely self-serving hearsay, admitted without objection. But the dispositive question boiled down to credibility: whether the probate court believed that the deceased repeatedly voiced his intent that the joint account was one of convenience rather than survivorship. Were we reviewing the evidence de novo we might find the evidence somewhat suspect, and possibly even wanting. But the witnesses' credibility is central to the legal issue at hand. The probate court believed the challengers and its opinion reflects a rational view of the evidence. We are not left with a definite and firm conviction that the probate court made a mistake in ruling as it did, and affirm.

# I

Edward Sadorski, Sr. owned an account at First State Bank. Two months before he died, he named Ann Sadorski, one of his five surviving adult children, as a joint owner of the account. He specifically selected an account with the right of survivorship. The form he signed offered him other options, including "Joint - No Survivorship," and "Trust - Separate Agreement." The form also provided that only one signature was required for a withdrawal.

After Edward, Sr.'s death, his other four surviving children asserted in the probate court that their father had taken this action solely for convenience, and that he actually intended that the proceeds of the account would be shared equally among the five of them. The probate court conducted an evidentiary hearing and found that "clear and convincing" proof supported that Ann Sadorski was added to the account "merely as a matter of convenience to assist in the paying of bills . . . should he pass."

The probate court rested its ruling on the testimony of two of Edward Sr.'s children, and that of a friend. Karen Maher, a daughter, testified that during a discussion about his last will and testament, her father had expressed that "[h]e wanted everything to be divided evenly" except for her father's "liquor/bar business," which Edward, Sr. left to his oldest son, Edward Sadorski, Jr. Maher recounted that her father called her and asked her to take him to the bank so that he could place Ann's name on his account. She claimed that during their conversation, "he was talking about . . . the assets, about, you know, this being for convenience purposes; that to have everything divided between . . . the brothers and sisters, evenly, after the expenses were paid." Ann was the "executor" of Edward, Sr.'s will, Maher elaborated, and "he wanted her to have easy access to the funds to pay his last bills," funeral expenses, and any other necessary estate obligations, avoiding probate. On the ride home from the bank, her father asked Maher to contact Ann to let her know that she had to pick up and sign the account paperwork the bank had provided.

William Bengel, a friend of Edward, Sr., testified that he spoke to Edward, Sr. after the account change and approximately five weeks before Edward, Sr.'s death. According to Bengel, Edward, Sr. told him that he "had gone to the bank with Annie; and that he decided to --- since Annie was executor --- that he wanted for a matter of convenience to put her on the bank account[.]" Bengel reiterated Maher's claim that Edward, Sr. intended that his estate be divided equally among his surviving children, with the exception of the liquor license. "He was not giving the money to Ann," Bengel asserted. And Bengel insisted that Edward, Sr., had used the phrase "as a matter of convenience."

The court probed Bengel's testimony closely, expressing some doubt that Edward, Sr., would have been familiar with the legal term "as a matter of convenience:"

> If he was that savvy, then, it would cause me to believe that he knew the effect of writing a joint account or adding a person to an account. And if he was that savvy to know these legal realities, then it would cause me to believe that perhaps he did intend his daughter Ann to be the recipient of that account after his death.

After all, if he . . . knew what he was doing, that is the legal effect of doing what this account does when a name is added to it, then why am I not to believe that that's exactly what he intended?

Bengel responded by stating that Edward, Sr. "believed in his children" and trusted them to follow his wishes.

Edward Sadorski, Jr. echoed this testimony, maintaining that Edward, Sr. had advised that "he was going to add my sister to [the account] for the convenience of being able to pay bills if anything should happen to him." On cross examination, Edward, Jr. again testified that his father had used the word "convenience." Under brief questioning by the court regarding whether he "actually remember[ed] him using the actual word 'convenience,' " Edward, Jr. stated, "I can't swear to it, no."

Ann Sadorski explained that she had lived with her father until she was 35 years old, and had a Master's degree in accounting. While she lived with him, Ann helped her father with household chores, the landscaping, and taking care of her mother. Edward, Sr. had advised her that he added her to his account, but she recalled nothing about their conversation other than that "[h]e didn't say that he put me on for convenience[.]"

While expressing some suspicion regarding the witnesses' persistent use of a legal term of art ("convenience account"), the court found that Edward, Sr. had not intended to vest title in his daughter Ann:

> I do find that there is clear and convincing evidence --- I don't even know if that's the standard, but I think it's that high --- that Edward Sadorski, Sr., . . . added the name of Ann Sadorski merely as a matter of convenience to assist in the paying of bills should he . . . pass. That for the reason I said earlier, there's nothing about her condition that makes me think that he knowingly decided to overturn the equal division that otherwise existed in the . . . Will, to suddenly at the end of his life, favor Ann above all of the other children.
>
> Yes, the box is checked with joint with survivorship, and not as tenants in common. But it's a part of a bank form that a person is charged with knowing, but in terms of making such a big difference in his estate plan, it is evidence --- and it's the strongest evidence, that Ann Sadorski has. But --- then I have to compare it to the oral testimony. Ann, quite honestly, was not able to say anything further in support of her case, which is good, as far as credibility. But it doesn't add anything to . . . the form.
>
> On the other side, I had three witnesses. . . . I've already gone into great detail as to why I was suspicious of the testimony, but in the final analysis, I do not believe that all three were purposely lying or making this up. They may have picked up the term [convenience] in the course of litigation to understand that it does have significance. Probably the lynchpin, as I said, was today when Edward Sadorski, Jr. was testifying he ultimately did not use the word [convenience]

-3-

probably at a time when he thought [not using the word would] lose the case. . . . And, of course, it has the converse affect [sic] that actually won the case. . . .

Telling the truth . . . makes a big difference in how . . . cases come out. But I'm not completely discounting the . . . testimony of Maher or Bengel either, just because they used the word [convenience], doesn't mean I can totally think of their testimony phonyed-up or artificially created. Because, first of all, the courts have used the term 'convenience' because it is the most logical word in the English language to describe what is happening.

Secondly, people could have picked up the significance of that word from just reading the pleadings or being around or talking to . . . the lawyers or reading things on the Internet. And, again, it is not so shocking that lay people would use the word that lawyers and judges have come to apply to situations like this.

So three witnesses giving testimony that this was essentially for convenience, no witness to testify the other way, one form that stands in the way of the conclusion, and the circumstantial evidence, which is that Mr. Sadorski wanted things to go equally. I . . . think that this was not meant by him to be a total revision of his estate plan on August 28, 2014, about two months prior to his death.

I would also note that Ann Sadorski used the funds in a way that would have been consistent with what Edward Sadorski would have wanted, essentially the . . . cost of administration, [and] the cost of the funeral. All of that came out of these funds. It just made sense that these funds are, and should be, a part of the estate. . . .

II

MCL 487.703 governs joint accounts and provides, in relevant part:

When a deposit shall be made, in any bank by any person in the name of such depositor or any other person, and in form to be paid to either or the survivor of them, such deposits thereupon and any additions thereto, made by either of such persons, upon the making thereof, shall become the property of such persons as joint tenants, and the same together with all interest thereon, shall be held for the exclusive use of the persons so named and may be paid to either during the lifetime of both or the survivor after the death of 1 of them.

* * *

The making of the deposit in such form shall, in the absence of fraud or undue influence, be prima facie evidence, in any action or proceeding, to which either such banking institution or surviving depositor or depositors is a party, of the intention of such depositors to vest title to such deposit and the additions thereto in such survivor or survivors.

-4-

The statutory presumption of intent to vest title in the survivor of a joint bank account may be "rebutted by reasonably clear and persuasive proof to the contrary, i.e., by proof of the decedent's intent that title to the jointly held funds not vest in the survivor." *Matter of Estate of Cullmann*, 169 Mich App 778, 786; 426 NW2d 811 (1988). Once rebutted, the presumption of joint ownership "may not be weighed against competent evidence." *Mineau v Boisclair*, 323 Mich 64, 70; 34 NW2d 556 (1948). More specifically, competent evidence rebutting the presumption dissolves it, *Pence v Wessels*, 320 Mich 195, 199-200; 30 NW2d 834 (1948), although a decedent's intent to vest title vest in the survivor "remains at least a permissible inference for the trier of fact." *Kirilloff v Glinisty*, 375 Mich 586, 588-589; 134 NW2d 707 (1965).

Against this legal backdrop, we must reject Ann's initial argument that her siblings' evidence failed to overcome the statutory presumption. She contends that because her father's will benefitted Edward Sadorski, Jr. more than the other children, the probate court incorrectly determined that Edward Sadorski, Sr. "wanted things to go equally." In context, the court followed that statement with a caveat that the account change "was not meant by him to be a total revision of his estate plan . . . about two months prior to his death." The children were all aware of Edward Sr.'s intent to give the liquor license to Edward, Jr., as the latter had spent his adult lifetime working in the family's bar. We find no inherent contradiction in the court's ruling, and no factual or legal basis to upset its ruling.

Nor are we persuaded by Ann's second argument, that the self-serving evidence offered by her siblings should not have sufficed to overcome the presumption. The evidence was unchallenged on evidentiary grounds. We have been provided with no caselaw suggesting that the self-serving testimony of heirs challenging the ownership of a joint account must be excluded. And it appears that the probate court duly considered that two of the witnesses were self-interested.

Further, once the witnesses testified that Edward, Sr. intended the account to be one of convenience, the statutory presumption of survivorship disappeared. The probate court was entitled to weigh the witness testimony against the inference created by the bank form. We discern no legal errors, and are not definitely and firmly convinced that the probate court erred by finding that the account was intended as estate property.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly
/s/ Douglas B. Shapiro