SERKAIAN v OZAR

1. JOINT TENANCY—EVIDENCE—INTENT—DECEDENT'S DECLARATIONS.

Testimony of a stockbroker regarding a decedent's declarations after she had created joint stock interests with one of her daughters was inadmissible to show her intent in creating the joint tenancy; however, testimony of the decedent's sister regarding declarations of the decedent which occurred before the controverted transactions in creating a joint checking account with one of her daughters and a joint tenancy in certain stock with one of her daughters was not inadmissible on hearsay grounds.

2. WITNESSES—DEAD MAN'S STATUTE—OPPOSITE PARTY—DEFAULT—CORROBORATION.

An opposite party whose default as a defendant had been entered in a lawsuit instituted by an heir of a deceased person would ordinarily be estopped from testifying as to declarations made to her by the decedent, which would support allegations of another defendant in the lawsuit; however, the defaulting party's testimony was admissible where it concerned the decedent's intent to vest title in stock in another defendant and this testimony was corroborated by evidence on the record that stock certificates were found indicating such joint ownership (MCLA 600.2166[1]).

3. JOINT TENANCY—JOINT BANK ACCOUNTS—SURVIVORSHIP—PRESUMPTIONS.

The ownership of a joint bank account is presumed to be in the survivor (MCLA 487.703).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 20 Am Jur 2d, Cotenancy and Joint Ownership §§ 4, 9–14.

[2] 58 Am Jur, Witnesses § 281.

[3, 4] 20 Am Jur 2d, Cotenancy and Joint Ownership §§ 9, 27.

What constitutes a devise or bequest in joint tenancy notwithstanding statute raising a presumption against joint tenancy. 46 ALR2d 523.

[5] 38 Am Jur 2d, Gifts §§ 34, 35.

[6] 38 Am Jur 2d, Gifts § 51.

Necessity of delivery of stock certificate to complete valid gift of stock. 23 ALR2d 1171.

4. JOINT TENANCY—JOINT BANK ACCOUNTS—SURVIVORSHIP—PRESUMP-
   TIONS.

   A finding that the statutory presumption favoring the survivor as
   owner of a joint bank account had not been overcome was not
   clearly erroneous where the witnesses to rebut the presumption
   did not speak of fraud or undue influence but alleged that the
   convenience of the decedent was one of the reasons for the
   account, other testimony indicated that decedent was well
   aware of the effect of creating a joint interest with the right of
   survivorship, a joint signature card with the names of decedent
   and the survivor was produced, and evidence showed that the
   survivor made deposits and withdrawals prior to decedent's
   death (MCLA 487.703).

5. GIFTS—TITLE—DELIVERY—ACCEPTANCE.

   The three elements necessary to constitute a gift are: (1) intent to
   pass title gratuitously to the donee; (2) actual or constructive
   delivery; and (3) acceptance of the gift by the donee.

6. GIFTS—JOINT TENANCY—INTENT—DELIVERY.

   A finding that ownership of stock vested in a daughter as a result
   of a valid gift from a decedent was proper where the decedent
   took all steps necessary to place the stock in joint ownership
   between herself and the daughter before her death and the
   decedent did not thereafter change the stock ownership nor
   alter any provision in her will with regard to the daughter; and
   although decedent never told the daughter that the stock was
   held jointly during her lifetime, delivery was made because
   when a grantor conveys stock, by transfer through a registered
   securities dealer, to herself and a grantee as co-tenants with
   rights of survivorship, delivery to one of the co-grantees is
   presumed to be delivery to both, acceptance of the gift is
   presumed and the gift becomes effective on transfer, subject to
   the right of the transferee to repudiate title and refuse to
   accept the gift.

Appeal from Wayne, Thomas Roumell, J. Sub-
mitted Division 1 May 10, 1973, at Detroit. (Docket
No. 14471.) Decided August 28, 1973.

Complaint by Frances Serkaian against Adele
Ozar, in her own person and as administratrix of
the estate of Joan Muczynski, deceased, Janet
Shay, and Lillian Spincchia to set aside a gift of a

bank account and stocks and have the property declared to be part of decedent's probate estate. Judgment of no cause of action. Plaintiff appeals. Affirmed.

*Thurswell & Chayet,* for plaintiff.

*McCririe & Latreille* (by *William D. McCririe* and *Stephen P. Schnautz),* for defendants.

Before: J. H. GILLIS, P. J., and HOLBROOK and BASHARA, JJ.

BASHARA, J. Plaintiff appeals from a judgment of no cause of action in favor of the defendants. Decedent Joan Muczynski died on January 29, 1969, leaving as her heirs four daughters, Frances Serkaian, Adele Ozar, Janet Shay, and Lillian Spincchia. At her death the decedent possessed certain real and personal property including a joint checking account with rights of survivorship in the name of herself and her eldest daughter, Adele Ozar. Decedent also left 828 shares of stock in the Investment Company of America (ICA) and 100 shares of common stock in the Ford Motor Company, all of which were held jointly with rights of survivorship between decedent and Adele Ozar. Other bank accounts existed, each held jointly in the name of an individual daughter and the decedent mother.

Plaintiff, Frances Serkaian, instituted suit to have the bank account and stock, held by defendant Ozar as a joint tenant with the decedent, declared to be part of the decedent's probate estate.

Plaintiff sought to introduce testimony of Horace Arthur, a stockbroker, who at various times acted as agent for decedent as well as for the

parties to this suit. His testimony verified that the stock in question was transferred to the joint names of decedent and defendant Ozar in 1967. Shortly before decedent's death in 1969, she explained to him that the stock was held jointly with defendant Ozar as she was the eldest daughter. She told him that by European custom the eldest child was to own and take responsibility for distributing the property equally to all the children at decedent's death. The trial court excluded the testimony as hearsay and inadmissible under any exception to the hearsay rules.

Testimony was also offered through deposition of one Margaret Antczak, a sister of decedent. She recalled several conversations in which decedent spoke of her general intent that her estate be divided equally among her daughters. No mention was made to deponent regarding the creation of the joint stock or bank account with defendant Ozar. This testimony was ruled inadmissible on hearsay grounds as well. Plaintiff contends it was error to exclude the testimony of witnesses Arthur and Antczak.

We concur in the trial judge's ruling that Horace Arthur's testimony would be inadmissible as it related to decedent's declarations after she created the joint stock interests.

In *Pence v Wessels,* 320 Mich 195, 204; 30 NW2d 834, 838 (1948), the Court ruled on the admissibility of testimony concerning the decedent's state of mind in opening a joint bank account, stating:

"To the extent that this testimony purported to disclose statements allegedly made by the deceased not in the presence of the defendant, *after* the joint bank deposits were made, and decedent's statements made at that time referring to his will and his intentions in disposing of his property thereunder, the testimony of

this witness was not admissible to show his intentions with reference to the deposits at the time they were made. On the other hand, much of the testimony adduced from this witness was admissible. It was proper to show the decedent's intentions and arrangements prior to his making the joint bank accounts, to rebut the presumption of joint ownership between the deceased and the defendant. *Mitts v Williams,* [319 Mich 417; 29 NW2d 841 (1947)]."

The admissibility of Margaret Antczak's testimony is more difficult to determine. The exact time of her conversation with decedent is one of the key tests, but her testimony as to such conversations spans nearly five years. As some of the declarations occurred before the controverted transactions, it was error for the trial court to hold all of Mrs. Antczak's testimony inadmissible on hearsay grounds.

The dead man's act, MCLA 600.2166; MSA 27A.2166 was used as a ground for objecting to the testimony of Horace Arthur, Margaret Antczak, and defendant Janet Shay. Mrs. Shay testified as to declarations made to her by decedent, supporting several of defendants' allegations. Plaintiff objected, contending Shay was a party within the meaning of the statute, notwithstanding the fact that her default had been entered. In *Seeber v Citizens State Bank of Sturgis,* 7 Mich App 33, 37; 151 NW2d 222, 224 (1967), the Court stated:

"The fact that Mrs. Morse was not a party to the plaintiffs' action does not negate the fact of her antagonistic interest. The statute renders the testimony of an opposite party inadmissible whether or not the person is a party of record. *Caswell v Smith's Estate* [263 Mich 390; 248 NW 845 (1933)]."

The reasoning of that decision applies to the case at bar. If an opposite party not of record may not

testify, then an opposite party who has defaulted should likewise be estopped from testifying, absent corroboration. Defendant Shay's testimony, however, concerned her mother's intent to vest title to the stock in defendant Ozar. This testimony is corroborated by evidence on the record that stock certificates were found indicating such joint ownership. The testimony is therefore admissible under the provisions of MCLA 600.2166(1); MSA 27A.2166(1).[1]

The defendant's objection to Margaret Antczak's testimony was also based on the dead man's act, but the record and briefs on appeal do not disclose the specific ground relied upon. Having no interest in the estate, Mrs. Antczak would be regarded as an independent third party for purposes of the statute. *Finch v Modern Woodmen of America,* 113 Mich 646; 71 NW 1104 (1897). This Court finds her testimony was proper subject to the hearsay limitations previously discussed.

In summary, the only relevant specific testimony of decedent's intention as to the disposition of the stock was that of Horace Arthur. Since that testimony alluded to a period of time after the actual transfer of the stock, the exclusion was proper on hearsay grounds. The testimony of Janet Shay, and Margaret Antczak in part, should have been admitted into evidence. Shay's testimony, however, would not change the result and Antczak's testimony was not relevant to decedent's intent in specifically creating the bank account and stock interest. We therefore find the exclusion to be

---

[1] "Sec. 2166. (1) in any action *by or* against a person incapable of testifying, a party's own testimony shall not be admissible as to any matter which, if true, must have been equally within the knowledge of the person incapable of testifying, unless some material portion of his testimony is supported by some other material evidence tending to corroborate his claim."

harmless error. *Knoper v Burton,* 383 Mich 62; 173 NW2d 202 (1970); GCR 1963, 529.1.

Plaintiff contends that the decedent never intended to pass title to the joint bank account to defendant Ozar, but opened it for decedent's own convenience. The ownership of joint bank accounts in Michigan is presumed to be in the survivor. The source of that presumption is MCLA 487.703; MSA 23.303 which provides in part:

"The making of the deposit [a joint account] in such form shall, in the absence of fraud or undue influence, be prima facie evidence, in any action or proceeding, to which either such banking institution or surviving depositor or depositors is a party, of the intention of such depositors to vest title to such deposit and the additions thereto in such survivor or survivors."

The admissible testimony offered to rebut the presumption is that of defendant Ozar and plaintiff's husband. Neither witness spoke of fraud or undue influence. Both alleged that the convenience of decedent was one of the reasons for the account. Other testimony, for defendant, indicated decedent was well aware of the effect of creating a joint interest with the right of survivorship. In addition, the joint signature card with both names of decedent and defendant Ozar was produced. Evidence also showed that defendant Ozar made deposits and withdrawals prior to decedent's death. The facts at bar are similar to those which appeared in *Jacques v Jacques,* 352 Mich 127, 138; 89 NW2d 451, 457 (1958), where a joint checking account was opened by the decedent with his daughter-in-law. The Court stated:

"While the evidence relied upon by the appellant may well infer that 1 of the purposes of decedent in establishing this account was to make it possible for his

daughter-in-law to pay some of his bills at his direction, we agree with the chancellor below that such testimony was not necessarily inconsistent with decedent's expressed intention of creating survivorship rights in defendant Jane Jacques."

There was no testimony in our present suit to establish what decedent's ultimate intent may have been as to the disposition of the account. The trial judge sitting as the trier of fact should not be disturbed in his determination that the statutory presumption was not overcome. This Court does not substitute its judgment for the trial court sitting without a jury unless findings of fact are clearly erroneous. *Rouge Employees Credit Union v Wilson,* 7 Mich App 16; 151 NW2d 214 (1967).

The ownership of the joint stock interest in question depended on whether a gift was made to defendant Ozar by decedent. The three elements necessary to constitute a gift are: (1) intent to pass title gratuitously to the donee; (2) that actual or constructive delivery be made; and (3) that the donee accept the gift. *Osius v Dingell,* 375 Mich 605; 134 NW2d 657 (1965); *Jones v Causey,* 45 Mich App 271; 206 NW2d 534 (1973). Plaintiff alleges there was no intent to pass title gratuitously to the stock as required in (1) above. She argues that the stock was placed in defendant Ozar's name jointly with decedent so defendant Ozar could distribute the stock equally after her mother's death. Further, defendant Ozar admitted decedent never told her the stock was held jointly during her lifetime.

Defendant Ozar's position, however, is supported by several facts. First, decedent took all steps necessary in 1967 to place the stock in their joint ownership. Second, decedent did not thereafter change the stock ownership nor did she alter any

provision in her will with regard to Adele Ozar. We are persuaded that when a grantor conveys stock, by transfer through a registered securities dealer, to herself and a grantee as co-tenants with rights of survivorship, delivery to one of the co-grantees is presumed to be delivery to both. *Allender v Allender,* 199 Md 541; 87 A2d 608 (1952).

Although no Michigan cases have been found directly on point we are impressed by the decision in *Allender, supra.* The decedent father there placed stock certificates in his own name and in the names of each of several children as joint tenants with the right of survivorship. The Court found that the father had retained possession of the certificates in his own safety deposit box, received all dividends, and voted all shares. Further, no other person knew of the interests until after his death. The Maryland Supreme Court held the surviving joint tenants were entitled to sole ownership, having found that all elements of a gift were present. The following language is relevant:

"We think the surrender of the old certificates and the issuance of new ones was sufficient to effect a present transfer of the donor's interest. * * * Nor does the fact that delivery of the new certificates was made to the donor in his capacity of joint owner vitiate the transaction, since 'the possession of one cotenant is in contemplation of law the possession of the other'. *Young v Cockman,* 182 Md 246, 251; 34 A2d 428, 431; 149 ALR 1006, 1010.

\* \* \*

"Nor is it material that the donees were not informed concerning the transfer. Acceptance of the gift is presumed until the contrary is shown; or, as the principle is otherwise stated, the gift is effective on transfer, subject to the right of the transferee to repudiate title and refuse to accept the gift." 199 Md 546, 547; 87 A2d 609, 610. See also *Bunt v Fairbanks,* 81 SD 255; 134

NW2d 1 (1965), and *Eisenhardt v Lowell,* 105 Colo 417; 98 P2d 1001 (1940), for the same result.

In view of the foregoing, the trial court's finding that the stock and bank account vested in Adele Ozar was proper. *Rouge Employees Credit Union v Wilson, supra.*

Affirmed. Costs to appellee.

All concurred.