168 Mich. App. 704 (1988)
425 N.W.2d 135
In re SKULINA ESTATE
MANISTEE BANK & TRUST COMPANY
v.
BOEHNING
Docket No. 80330.
Michigan Court of Appeals.
Decided February 26, 1988.
Smith, Johnson, Brandt & Heintz, P.C. (by Patrick E. Heintz), for petitioners.
John B. Daugherty, and Miller, Canfield, Paddock & Stone (by Thomas J. Heiden and Charles L. Sweeris), for Anna Boehning.
Before: G.R. McDONALD, P.J., and DOCTOROFF and R.E. ROBINSON,[*] JJ.
PER CURIAM.
Anna Boehning (hereafter respondent), appeals as of right from a judgment of the Manistee County Probate Court following a jury verdict in favor of petitioners.
Charles Skulina (decedent) was the unmarried and childless brother of respondent. Charles Boehning and Thomas Boehning are respondent's sons. In addition to respondent, decedent was survived by his brother John Skulina and a second *706 sister, petitioner Mary Peck. Decedent was also survived by petitioners Gerald Skulina and Shirley Atkins, children of his brother Joseph Skulina, who predeceased him. These survivors are his heirs at law. Anna Boehning is the only respondent appealing the verdict and judgment.
Decedent died intestate at the age of sixty-seven on April 12, 1985, after suffering an aneurysm. Respondent was appointed temporary personal representative of decedent's estate. She was succeeded by petitioner Manistee Bank & Trust Company as personal representative.
Prior to his death, decedent owned land in Manistee County which for years he farmed for his living, and which in later years produced for him substantial oil and gas revenues. At the time of his death, decedent left various assets amounting to something over $500,000 in addition to two joint bank accounts in the names of decedent and respondent totaling approximately $147,000 and government bonds worth $18,500 plus interest, also in the joint names of decedent and respondent. It is these joint assets which are the subject of this dispute, respondent claiming them as the survivor of the joint owners. Further facts will be developed as they may become necessary to resolution of the issues raised.
Respondent asserts, as her first perceived error, an abuse of discretion by the trial judge in admitting the testimony of an expert in psychology to establish decedent's intent in making the bank accounts and bonds joint with respondent.
The expert, Donald Van Ostenberg, who was eminently qualified as a psychologist, reviewed deposition transcripts and summaries of interviews with many persons who had known the decedent. Based on this information, he expressed as his *707 opinion that decedent intended the jointly held assets to be divided among all of his heirs.
Respondent argues that Van Ostenberg's testimony was inadmissible because it did not assist the jury as required by MRE 702:
If the court determines that recognized scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
In other words it did not do for the jury what the jury could not have done for itself had it read the depositions or listened to the interviews. We agree that the trial judge abused his discretion in admitting such testimony.
The Court held in In re Blackwell's Estate, 50 Mich App 204, 209; 213 NW2d 201 (1973), rev'd on other grounds 391 Mich 798 (1974), as follows:
[W]here the jury would be in as good a position as the expert to determine the cause of a particular injury, the expert should not be permitted to express his opinion. In 38 ALR3d 13, § 16, p 47, it is stated:
"The opinion of an expert as to the cause of an accident or occurrence is not admissible if the issue upon which it is tendered is of such nature that men of ordinary experience and observation can decide it for themselves on factual evidence."
And in a case closer to our concern here, the intent of decedent, the Texas court in Thompson v Mages, 707 SW2d 951 (Tex App, 1986), held inadmissible the testimony of a psychologist offered to establish whether a then-deceased son had intentionally and wrongfully caused his father's death *708 two years earlier. As here, the psychologist based his testimony on interviews with persons who had known the son. Texas at the time had a rule (Texas Rules of Evidence 702) somewhat similar to MRE 702. As its rationale for excluding the testimony, the court held:
Moreover the issue to be decided in this case is whether Don Thompson intentionally and wrongfully caused the death of his father. Under the facts of this case, the jury did not need the assistance of scientific, technical, or specialized knowledge to decide this question. The admission of this testimony would not have assisted the jury in making inferences regarding the fact more effectively than the jury could do so unaided. [707 SE2d 957].
Van Ostenberg's efforts are summarized in his own testimony on cross-examination:

Q. [By Mr. Daugherty] Is the opinion that you gave on the stand, your closing opinion having to do with whether or not Charlie expected everything to be divided out equally  I believe that was the thrust of your opinion  is that correct?
A. Yes.

Q. Is this an opinion that might as well and could be reached by a lay person in the community who knew Charlie and who would be making their statement on the basis of their knowledge of Charlie, their observation of Charlie and what Charlie may have said to them at any given time?
A. I think so.

Q. The statements in the test quite often are either conclusions, or constitute an opinion of the person answering the statement, is that correct?
A. Yes.
* * *

Q. [By Mr. Daugherty] Did any of the individuals who took the test, did any of the persons whose *709 depositions you read themselves take a psychological test of any type for you to do a personality screening of that individual?
A. No.

Q. If they are your instruments, how do you screen out the bias?
A. If what are my instruments?

Q. If the people who are answering the test, if these people who are giving testimony and depositions are your instruments for giving testimony today, how do you screen out their bias?

A. And you are referring to specifically their test-taking behavior?

Q. Test-taking behavior, how they respond to the questions on the test and how they respond to questions of counsel at a deposition. How do you screen out their bias?

A. Well, one of the common ways to do it of course....
Q. Did you do it in this case, first of all?
A. Yes.
Q. Screen out their bias?

A. No I can't say that I screen out their bias, because I can't attest that I was actually able to do this. I can tell you as a practicing psychologist who has done this for a living, how I attempt to do it. I attempt to do it first of all by looking for a consistency through-out and here I had depositions, interviews and answers to a structured test. I look for whether or not a person answers a question in a free manner, or whether a person will change their testimony under cross-examination. I look for whether or not a person is hesitant, whether or not a person is vague, or if they appear to be straightforward and I make judgments about that, much as I would if I were interviewing that person.
Q. Did you examine inconsistencies in testimony and take that into consideration?
A. Yes, that is what I said.
Q. Form a value judgment?
A. Yes. [Emphasis added.]
*710 Whether Van Ostenberg performed a psychological autopsy as contended by respondent or constructed a psychological profile as contended by petitioners, his efforts run into the same objections, i.e., they represent an attempt by an expert to sit as a trier of fact in a situation where expertise is not required.
Respondent's next challenge is to the propriety of the trial court's admitting into evidence, over objection, the deposition of a witness who had died prior to trial. Again we agree that the trial judge erred.
On April 29, 1983, the deposition of Quinton Drotleff was taken. Drotleff died before trial and petitioners sought, and were granted, permission to introduce his deposition into evidence in order to establish decedent's intent in creating the joint bank account.
The deposition referred to frequent conversations between Drotleff and decedent, some of them after the creation of the joint accounts, and some unidentified as to time.
In Pence v Wessels, 320 Mich 195; 30 NW2d 834 (1948), the Court held that statements of intent made by a decedent, not in the presence of his joint owner, after creation of a joint bank account are not admissible to establish his intent at the time of creating the account. See also Mitts v Williams, 319 Mich 417; 29 NW2d 841 (1947), and Serkaian v Ozar, 49 Mich App 20; 211 NW2d 237 (1973).
To the extent that the deposition refers to conversations after creation of the accounts and to the extent that it refers to conversations not identified as to time, we hold that it is not admissible.
We find no merit in respondent's challenge to the court's instructions. Her claims of error in the *711 court's refusal to enter a judgment notwithstanding the verdict and in its refusal to grant a new trial are now moot.
Reversed and remanded for further proceedings consistent with this opinion.
NOTES
[*] Former circuit judge, sitting on the Court of Appeals by assignment.