187 Mich. App. 649 (1991)
468 N.W.2d 322
In re SKULINA ESTATE
PECK
v.
BOEHNING
Docket No. 114596.
Michigan Court of Appeals.
Decided March 5, 1991, at 9:30 A.M.
Smith, Johnson, Brandt & Heintz, P.C. (by Patrick E. Heintz), for petitioners.
John B. Daugherty, and Miller, Canfield, Paddock & Stone (by Thomas J. Heiden and Meg Hackett Carrier), for respondent.
Before: NEFF, P.J., and MAHER and HOOD, JJ.
PER CURIAM.
Respondent appeals as of right from a judgment of the Manistee County Probate Court that ordered her to return to the estate of her deceased brother, Charles Skulina, the funds from jointly held bank accounts and United States government bonds on the basis of a jury verdict in favor of petitioners, decedent's remaining heirs.
*651 I
This case is before this Court for a second time. In In re Skulina Estate, 168 Mich App 704; 425 NW2d 135 (1988), this Court reversed the judgment entered following a jury verdict in favor of petitioners based in part on the erroneous admission of the testimony of an expert in psychology, Dr. Van Ostenberg. The expert had reviewed deposition transcripts and interview summaries of several people who had known decedent. On the basis of this information, Van Ostenberg opined that decedent intended the jointly held assets to be distributed among all his heirs.
This Court found that the trial court abused its discretion in admitting the testimony because it did not assist the jury as required by MRE 702, which provides:
If the court determines that recognized scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
The Court relied in part on Thompson v Mages, 707 SW2d 951 (Tex Civ App, 1986), which held that a psychologist's testimony which was offered to establish whether a then-deceased son had intentionally and wrongfully caused his father's death was inadmissible. The psychologist had based his testimony on interviews with people who had known the son. The Texas court explained its rationale for excluding the testimony under its similar evidentiary rule:
Moreover the issue to be decided in this case is *652 whether Don Thompson intentionally and wrongfully caused the death of his father. Under the facts of this case, the jury did not need the assistance of scientific, technical, or specialized knowledge to decide this question. The admission of this testimony would not have assisted the jury in making inferences regarding the fact more effectively than the jury could do so unaided. [707 SE2d 957.]
The Skulina Court then summarized Van Ostenberg's efforts in forming his opinion and concluded:
Whether Van Ostenberg performed a psychological autopsy as contended by respondent or constructed a psychological profile as contended by petitioners, his efforts run into the same objections, i.e., they represent an attempt by an expert to sit as a trier of fact in a situation where expertise is not required. [168 Mich App 710.]
In the second trial, petitioners again presented the testimony of Dr. Van Ostenberg. The witness did not testify this time with regard to whether decedent had intended his jointly held assets to be distributed among his heirs. However, his "psychological profile" of decedent was based on interview summaries and deposition reviews of people who had known decedent. On the basis of this information, Van Ostenberg discussed decedent's personality traits. Respondent objected to this testimony and to Van Ostenberg's statement regarding respondent's personality traits elicited by a lengthy, detailed hypothetical question. In this appeal, respondent has again challenged the admissibility of the expert testimony.
We have reviewed the record and conclude that the trial court abused its discretion in admitting Dr. Van Ostenberg's testimony because it did not meet the requirements of MRE 702. Several witnesses *653 testified about the personalities and behaviors of both decedent and respondent. No specialized knowledge was necessary to assist the jury in carrying out its functions of determining what decedent intended and whether respondent was capable of, and exerted undue influence over, her brother. As previously determined by this Court, Van Ostenberg's testimony "did not do for the jury what the jury could not have done for itself had it read the depositions or listened to the interviews." 168 Mich App 707. The psychologist's expertise was simply not required in this case for the jury to determine the ultimate issues before it. Our conclusion pertains not only to Van Ostenberg's testimony about decedent's personality traits, but also to evaluations of respondent's personality.
II
Our determination that the testimony of Dr. Van Ostenberg was erroneously admitted requires us only to briefly address respondent's remaining issues for purposes of a new trial.
A
Initially, we note that respondent did not object to the trial court's instruction on the issue of ownership of the Series HH government bonds, and therefore she has failed to properly preserve this issue on appeal. Regardless, we are not persuaded that In re Bell Estate, 154 Mich App 558; 398 NW2d 466 (1986), precludes petitioners from proving that respondent's ownership was not acquired as a result of undue influence or fraud. Bell merely dictates that the statutory presumption found in MCL 487.703; MSA 23.303 for joint bank accounts is inapplicable to disputes over United *654 States government bonds. Bell has little bearing on the issue in this case whether ownership was gained by impermissible means.
B
As part of its instructions to the jury, the court read SJI2d 6.01(d), which permitted the jury to draw an adverse inference if it believed that evidence not produced by respondent was under her control, could have been produced by her, and no reasonable excuse was given for her failure to produce the evidence. This instruction was read twice, once with respect to respondent's failure to produce a canceled check or bank slip evidencing a $10,000 deposit made in her brother Jerry's bank account twenty years before decedent's death, and again in response to her failure to produce decedent's book on wills and probate that was discovered by one of her sons. On appeal, respondent contends that neither instruction should have been permitted.
We have reviewed the record and conclude that both readings of SJI2d 6.01(d) were erroneous. The production of a canceled check or bank slip evidencing a $10,000 deposit made to a third party's account nearly twenty years before decedent's demise is immaterial with regard to whether decedent was subjected to undue influence or fraud by respondent. This instruction is permissible only when the evidence not produced is material; here the evidence was clearly collateral to the central issues and only marginally relevant to respondent's credibility.
Likewise, the instruction should not have been given on the basis of respondent's failure to produce decedent's book on wills and probate. The instruction would be permissible if a question of *655 fact existed regarding whether respondent had control over the book. However, we are not persuaded that such a factual dispute existed. There was no direct evidence that respondent had control of decedent's book. The only evidence remotely linking respondent to the book was its discovery by one of her sons. Even were we to acknowledge the existence of a question of control, we find that this evidence is immaterial with regard to whether respondent exerted undue influence or committed fraud in obtaining joint ownership of the accounts or bonds. Although the book may have contained decedent's will or other evidence of his distribution intentions, the postcreation intentions of decedent are not admissible to establish decedent's intent at the time of creating the accounts and bonds. Pence v Wessels, 320 Mich 195; 30 NW2d 834 (1948); In re Skulina Estate, supra, p 710. See also Mitts v Williams, 319 Mich 417; 29 NW2d 841 (1947); Serkaian v Ozar, 49 Mich App 20; 211 NW2d 237 (1973).
C
Respondent also alleges error requiring reversal in the instructions regarding convenience accounts, constructive trusts, and "poor man's" wills. Respondent objected to the same instructions on convenience accounts and constructive trusts in the prior appeal. This Court found no merit to the challenges, 168 Mich App 710, and the law of the case doctrine bars further consideration in this appeal. Allen v Michigan Bell Telephone Co, 61 Mich App 62, 65; 232 NW2d 302 (1975). With respect to the instruction regarding "poor man's" wills, we note that in the prior appeal respondent alleged error in the court's failure to read this instruction. Although this Court did not agree that *656 this was error requiring reversal, the trial court granted respondent's request at the new trial and read the instruction. We again find no error.
D
We conclude that no error resulted from the trial court's instructions regarding the statutory presumption in MCL 487.703; MSA 23.303, the presumption of undue influence arising from confidential or fiduciary relationships, and the relative burdens of proof. However, our decision does not preclude the parties on retrial from refining the instructional language in order to satisfy any questions regarding clarity.
E
Lastly, we conclude that no error occurred when the trial court refused to admonish petitioner Shirley Atkins to answer a question by respondent that required an opinion on legal terms. Likewise, we find no error in the court's permitting petitioners to rebut the statutory inference of joint ownership by evidence other than of fraud or undue influence. The statute does not preclude petitioners from establishing that decedent intended the funds in the accounts and bonds to be evenly distributed upon his death. Respondent's claims of error in the trial court's refusal to grant her motions for a directed verdict, a judgment notwithstanding the verdict, or a new trial are now moot.
Reversed and remanded for further proceedings.