*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ESTATE OF WILLIAM PATRICK MCNEIGHT.

---

CHRISTINE BRADLEY, Personal Representative of the ESTATE OF WILLIAM PATRICK MCNEIGHT,

      Appellant,

v

JULIANNE MCNEIGHT,

      Appellee/Cross-Appellee,

and

WILLIAM GERARD MCNEIGHT,

      Cross-Appellant.

UNPUBLISHED
July 2, 2019

No. 340777
Wayne Probate Court
LC No. 2015-810259-DE

---

Before: SAWYER, P.J., and CAVANAGH and SERVITTO, JJ.

PER CURIAM.

This case involves competing claims to an individual retirement account (IRA) owned by the decedent, William Patrick McNeight, before his death. The decedent's daughter, appellee Julianne McNeight (Julianne), claimed that she was entitled to the account funds upon the decedent's death, as the designated beneficiary of the account. Appellant Christine Bradley, the personal representative of the decedent's estate, claimed that the IRA account should be considered an estate asset, to be distributed equally among the decedent's six children in accordance with the terms of his will. The trial court denied Bradley's motion for summary disposition under MCR 2.116(C)(10), granted summary disposition in favor of Julianne under MCR 2.116(I)(2), and ordered that the account funds be released to Julianne. Bradley now appeals as of right. William Gerard McNeight (William), who is one of the decedent's other

children, filed a cross-appeal also challenging the probate court's decision to award the IRA account to Julianne. We affirm.

The decedent opened an IRA account with Bank One in 2003. At that time, he signed a form designating Julianne as beneficiary of the IRA account. Over the years, the decedent made several changes to the investments that funded his IRA. After Bank One merged with or was acquired by JP Morgan Chase Bank, N.A. (Chase), the decedent's 2003 beneficiary designation remained on file with Chase as the beneficiary designation for the decedent's IRA.

In 2012, the decedent opened a brokerage account with Chase that allowed him to acquire other investments for his IRA. At that time, Chase's financial advisor, Eric Molitor, contacted Chase's brokerage services department and was advised that the 2003 IRA beneficiary designation remained on file as the decedent's IRA beneficiary designation. When the brokerage account was opened in 2012, Molitor reviewed the 2003 beneficiary designation with the decedent and, according to Molitor, the decedent confirmed that he wanted Julianne to remain as beneficiary of his IRA. Because the decedent did not want to change his beneficiary, Molitor submitted the application for the new brokerage account with the 2003 beneficiary designation, even though Chase's internal procedures provided that a separate form, referred to as an adoption agreement, should be executed when a new account is opened. Chase's compliance department accepted the submitted documentation as sufficient to open the new account.

The decedent died on August 2, 2015, at the age of 68. The decedent was a widower, survived by his six children. Shortly before his death, the decedent called a family meeting, attended by five of his children, and expressed his intention that the children share equally in his estate, including assets with beneficiary designations. According to Bradley, however, due to his death a few days later, the decedent did not have time to change his beneficiary designations.

The decedent executed a will on July 31, 2015, two days before his death, which provided gifts of cash and other property to his 18 grandchildren and the son of a friend. He also left a van to Julianne. The remainder of his estate was to be divided equally among his six children. The decedent's will did not specifically mention his IRA or changing any beneficiaries previously designated by him for nontestamentary assets.

After the decedent's death, Chase determined that Julianne was the designated beneficiary of the decedent's IRA. Throughout this litigation, Bradley has challenged that determination. Bradley filed a motion for summary disposition under MCR 2.116(C)(10), arguing that the decedent's 2003 IRA beneficiary designation with Bank One was not an effective beneficiary designation for the decedent's 2012 IRA brokerage account with Chase, and that other evidence demonstrated that the decedent intended for the IRA account to be distributed equally among his children as part of his probate estate. Relying in part on the deposition testimony of Molitor, the probate court determined that there was no genuine issue of material fact that the 2003 beneficiary designation applied to the 2012 brokerage account. Therefore, Julianne was the designated beneficiary of that account. Accordingly, the court denied Bradley's motion for summary disposition, granted summary disposition in favor of Julianne under MCR 2.116(I)(2), and ordered that the IRA account funds be released to Julianne.

# I. BRADLEY'S APPEAL

Bradley argues that the probate court erred by denying her motion for summary disposition and granting summary disposition in favor of Julianne. We disagree.

We review a trial court's summary disposition decision de novo. *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). A motion under MCR 2.116(C)(10) tests the factual support for a claim. The court must consider the pleadings, affidavits, depositions, admissions, and any other documentary evidence submitted by the parties, and view that evidence in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. MCR 2.116(G)(5); *Maiden v Rozwood*, 461 Mich 109, 118-120; 597 NW2d 817 (1999). Summary disposition should be granted if, except as to the amount of damages, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Babula v Robertson*, 212 Mich App 45, 48; 536 NW2d 834 (1995). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420, 423; 864 NW2d 609 (2014). "If, after careful review of the evidence, it appears to the trial court that there is no genuine issue of material fact and the opposing party is entitled to judgment as a matter of law, then summary disposition is properly granted under MCR 2.116(I)(2)." *Lockwood v Ellington Twp*, 323 Mich App 392, 401; 917 NW2d 413 (2018).

The primary issue is whether the decedent properly executed a beneficiary designation for his IRA brokerage account with Chase, allowing title of that asset to transfer to Julianne outside the decedent's estate. MCL 700.6101 recognizes that certain instruments can provide for the nonprobate transfer of assets and provides, in relevant part:

> (1) A provision for a nonprobate transfer on death in an insurance policy, contract of employment, bond, mortgage, promissory note, certificated or uncertificated security, account agreement, custodial agreement, deposit agreement, compensation plan, pension plan, individual retirement plan, employee benefit plan, trust, conveyance, deed of gift, marital property agreement, or other written instrument of similar nature is nontestamentary. This subsection includes a written provision in the instrument that is intended to result in 1 or more of the following:

> (a) Money or another benefit due to, controlled by, or owned by a decedent before death is paid after the decedent's death to a person, including a trustee of a trust created by will, whom the decedent designates either in the instrument or in a separate writing, including a will, executed either before, at the same time as, or after the instrument.

Thus, this statute allows certain instruments, including an account agreement, to provide for the nonprobate transfer of money or some other benefit owned by the decedent before death to another person after the decedent's death. Under this statute, a nonprobate transfer of an asset under this statute must be made to a person "whom the decedent designates," and such a designation may be made "either in the instrument or in a separate writing," and the written designation may be "executed either before, at the same time as, or after the instrument."

Bradley emphasizes that the decedent orally expressed his intent for his property to be distributed equally among his children and that the decedent expressed a similar intent in the will he signed shortly before his death. However, the issue to be decided in this case is whether the decedent made an effective beneficiary designation for his IRA. Although MCL 700.6101(1)(a) allows a beneficiary designation to be made in a will, the decedent's will made no mention of his IRA. Further, Bradley cannot rely on the decedent's oral statements or his will to prove that he intended for his IRA to be distributed equally among all of his children. See *Waldron v Waldron*, 45 Mich 350, 353; 7 NW 894 (1881) ("oral evidence cannot be received to explain the intent [of the testator], except as it may bring before the court such circumstances surrounding the making of the will as may be necessary to an understanding of the terms employed"). The material question is whether the decedent's 2003 designation of Julianne as beneficiary of his IRA was an effective beneficiary designation for his 2012 IRA brokerage account, thereby permitting the nonprobate transfer of that asset to her.

It is undisputed that the decedent designated Julianne as beneficiary of his IRA in a written document executed in 2003 with Bank One. The parties disagree whether that beneficiary designation remained effective when the decedent opened his IRA brokerage account with Chase in 2012. To resolve whether there was a properly executed beneficiary designation signed by the decedent for the Chase brokerage account, the probate court relied on the testimony of Molitor, and other records produced by Chase, to conclude that the 2003 beneficiary designation was a proper beneficiary designation that governed the decedent's 2012 IRA brokerage account.

Bradley relies on evidence that Chase did not follow its own internal procedures when the 2012 account was opened to argue that the 2003 beneficiary designation was not a valid beneficiary designation for the 2012 brokerage account. Bradley argues that Chase's internal operating procedures required that an individual opening a new account associated with an existing IRA must also submit an adoption agreement with the application. However, Molitor explained that Chase's compliance division determined that the 2003 IRA beneficiary designation that the decedent completed when he opened his account with Bank One, naming Julianne as beneficiary, was acceptable as an adoption agreement. Molitor further explained that he did not require the decedent to execute a new beneficiary form when the account was opened in 2012 because he asked the decedent if he wanted to change his 2003 designation of Julianne as beneficiary and the decedent stated that no beneficiary change was necessary. In any event, the dispositive question is not whether Chase complied with its own internal operating procedures, but whether the decedent executed an instrument or separate writing that effectively designated Julianne as beneficiary of his IRA brokerage account. That is all that MCL 700.6101(1) requires for the nonprobate transfer of an IRA account. The 2012 brokerage account was associated with an existing IRA for which a beneficiary designation was already on file. Bradley has not produced any evidence to suggest that the decedent was aware that Chase was required to follow certain procedures before accepting the existing 2003 IRA beneficiary designation when opening the 2012 brokerage account associated with that IRA.

Furthermore, even if Chase did not follow its own procedures when the decedent opened the brokerage account in 2012, beneficiary designations need only substantially comply with the provisions of the contract regarding designating beneficiaries for the nonprobate asset. See *Harris v Metro Life Ins Co*, 330 Mich 24, 27-28; 46 NW2d 448 (1951); *Dogariu v Dogariu*, 306

Mich 392, 398; 11 NW2d 1 (1943); *Aetna Life Ins Co v Brooks*, 96 Mich App 310, 315-316; 292 NW2d 532 (1980). The substance of Bradley's claim is that Chase should have had the decedent execute another form to confirm whether he wanted to retain the IRA beneficiary he had previously designated in 2003 when he opened the 2012 brokerage account associated with that IRA. Again, however, because the decedent had already executed a written beneficiary designation for his IRA and there is no evidence that the decedent requested that the IRA beneficiary designation be changed before his death, there was no need for Chase to have the decedent execute an additional form.

Bradley relies on other accounts that the decedent opened over the years to attempt to show that the 2003 beneficiary designation was not indicative of the decedent's intent regarding the distribution of his 2012 IRA brokerage account. However, whatever intent the decedent may have had with regard to other accounts is not determinative of whether the 2003 beneficiary designation remained an effective beneficiary designation for the 2012 IRA brokerage account at the time of the decedent's death. Bradley contends that an adoption agreement for a brokerage account that the decedent attempted to open in 2007, naming other children as beneficiaries, supersedes the 2003 beneficiary designation. However, the 2007 account was automatically closed, most likely because it was never funded. Because it was not an open or active account when the decedent opened the brokerage account in 2012, the adoption agreement and beneficiary designation associated with that account was not in effect when the decedent opened the 2012 account. Conversely, the 2003 beneficiary designation remained an active IRA beneficiary designation. Therefore, the 2007 application and adoption agreement could not supersede the existing 2003 beneficiary designation that remained on file with Chase in 2012.

Bradley also argues that the probate court erred by considering Molitor's deposition testimony regarding the decedent's intent with respect to the IRA beneficiary designation for the 2012 brokerage account, but ignoring contrary affidavits from her brother William and the decedent's brother Michael regarding the decedent's expressed intent shortly before his death to distribute the IRA funds equally among his children. In its opinion, the probate court explained:

> Although statements of intent made by the decedent after an account has been created are not admissible to establish intent in creating the account, because the decedent's statements were made at the time the IRA account ending in 8444 was created, Molitor's deposition testimony is admissible to establish the decedent's intent. *In re Cullman Estate*, 169 Mich App 778, 788; 426 NW2d 811, 815 (1988) (holding that decedent's statements regarding the disposition of funds in a joint bank account are not admissible if they were made after the joint bank account were [sic] created); *In re Estate of Ortoleva*, unpublished opinion per curiam of the Court of Appeals, issued February 5, 2004 (Docket No. 243762), 2004 WL 226171, p 1. ("Because respondent failed to show that decedent expressed any intent to divide the joint account equally at the time she created the account, the testimony regarding her later state of mind was not admissible."); see also *Serkaian v Ozar*, 49 Mich App 20, 23; 211 NW2d 237 (1973). However, the decedent's statements to Molitor in 2015 about respondent remaining as beneficiary and those made on his death bed of his desire to have his children share the IRA proceeds equally are not admissible to demonstrate the decedent's intent since they were made after the account was created. *Id*.; *In re Skulina*

*Estate*, 168 Mich App 704, 710; 425 NW2d 135, 138 (1988) ("To the extent that the deposition refers to conversations after creation of the accounts and to the extent that it refers to conversations not identified as to time, we hold that it is not admissible."). Moreover, Molitor's deposition testimony is admissible parol evidence that supplements the Investment Account Application signed by the decedent on February 14, 2012. See *Opdyke Inv Co v Norris Grain Co*, 413 Mich 354, 367; 320 NW2d 836, 841 (1982) (holding that "extrinsic evidence may be used to supplement, but not contradict, the terms of the written agreement").

Bradley argues that the probate court erred when it ruled that the decedent's 2015 statements were inadmissible to establish the decedent's intent with regard to the disposition of the IRA funds. We agree that the cases cited by the probate court are distinguishable because they involved the creation of joint bank accounts, including statutory presumptions, and the possible conflicting claims of joint owners. See *Pence v Wessels*, 320 Mich 195; 30 NW2d 834 (1948). The issue in this case involved the decedent's intent to designate a beneficiary for his IRA account.

Although statements attributed to the decedent would be hearsay, MRE 801(c), which generally is inadmissible, MRE 802, an exception exists for statements indicative of a declarant's then-existing intent or state of mind. MRE 803(3) provides:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> * * *
>
> (3) Then Existing Mental, Emotional, or Physical Condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

Under this exception, the decedent's statements to Molitor in 2012 when he opened the brokerage account could be considered because they are statements of his then-existing state of mind or intent regarding the effect of the 2003 beneficiary designation then on file. The decedent's statements indicated that he did not intend to change the 2003 designation of Julianne as beneficiary of the IRA. Thus, Molitor's testimony was competent evidence of the decedent's intent with regard to the continued effect of the 2003 beneficiary designation.

According to the affidavits of William and Michael, the decedent told them on July 30, 2015, that he wanted his assets, including his IRA, to be distributed equally among his children. Even if these statements can be considered as admissible evidence of the decedent's state of mind and intent at that time, they are not effective to invalidate the written beneficiary designation then in place. According to the affidavits, the statements attributed to the decedent

indicate that the decedent was aware that his IRA was subject to a previously executed beneficiary designation. Michael's affidavit avers, in relevant part:

6. My brother expressed his intent for all of his beneficiary-designated assets including, but [sic, not] necessary [sic] limited to, his IRA, 401k and life insurance policies to be equally distributed to his six children upon his death.

7. Aside from the specific bequests, as outlined in my notes and subsequently in his will, Bill stated that he wanted the remainder of his estate shared equally among his children.

8. In addition to his home and automobiles, he stated that his existing 401k, his IRA, his group life insurance, and a couple of other life insurance policies were to be included in the remainder. These were his last wishes and were fairly represented in his will.

9. My brother informed the children who were present at the meeting of his intent to supersede the beneficiary designations in all applicable assets of his post-death estate, and to distribute them equally and among his six children.

Similarly, William's affidavit avers, in relevant part:

5. On July 30, 2015 (approximately one week before his death) my father called a family meeting to discuss his intent regarding his Estate's assets. My sisters, Jacquelyn Ireland, Julianne McNeight, Mary Scrimger and Christine Bradley attended the meeting, as well as his brother and palliative care physician. My father expressed his intent to create an estate plan and for all of his beneficiary-designated assets including, but not limited to, his IRA, 401k and life insurance policies to be equally distributed to his six children upon his death.

6. My father stated that "there was approximately $75,000.00 to [be given to] each of his six children in his IRA, and wanted everyone to get along and share everything, including his IRA, 401k, and life insurance policies. The beneficiary designations were not changed as a result of his insufficient time to do so [ . ]

7. My father informed all of his children of his intent to supersede the beneficiary designations in all applicable assets of his post-death estate, and to distribute them equally and among his six children.

William's and Michael's affidavits both make it clear that the decedent understood that some of his assets, including his IRA, were subject to previously executed beneficiary designations. Although the decedent may have intended to change or revoke those beneficiary designations, he did not take steps to change or revoke the designation with Chase, and he did not mention his IRA in his will. The decedent's intent alone to change the recipient of his IRA is insufficient to support the estate's claim to the IRA. See *Ladies' Auxiliary of Ancient Order of Hibernians v Flanigan*, 190 Mich 675, 677-678; 157 NW 355 (1916) (where there is an intent to

change the beneficiary of a fund, but that intent is not executed, the fund must be paid to the named beneficiary).

Bradley argues that the decedent's 2015 statements are admissible to resolve a latent ambiguity regarding the intended beneficiary of the 2012 brokerage account. She relies on the 2007 application and adoption agreement completed by the decedent for a prior brokerage account, which named other children as beneficiaries, to argue that a latent ambiguity existed regarding whether the decedent intended for Julianne to remain as beneficiary of the 2012 IRA brokerage account. A latent ambiguity "is one that does not readily appear in the language of a document, but instead arises from a collateral matter when the document's terms are applied or executed." *Kendzierski v Macomb Co*, 319 Mich App 278, 285; 901 NW2d 111 (2017), lv pending. As explained earlier, however, the 2007 account had been closed, apparently because it was never funded. Because that adoption agreement was associated only with that account, which was no longer active, it could not establish any ambiguity with respect to the intended beneficiary of the 2012 brokerage account. Furthermore, even if the 2007 adoption agreement can be considered as evidence of a latent ambiguity regarding the intended beneficiary, the decedent's 2015 statements to family members are not helpful in resolving that ambiguity, given that they do not purport to identify an intended designated beneficiary, but rather were being offered as evidence of the decedent's intent to change or nullify an existing beneficiary designation. As previously indicated, an intent to change a beneficiary that is never executed is ineffective to deprive an account's named beneficiary of the account funds.[1] In any event, Molitor's testimony indicated that the decedent made it clear in 2012 that he intended to rely on the existing 2003 beneficiary designation of Julianne as the beneficiary designation for the 2012 brokerage account.

We note that the probate court stated that it would not consider Molitor's testimony regarding his meeting with the decedent in 2015, shortly before his death. According to Molitor, the decedent reaffirmed at that time that Julianne was the intended beneficiary of the IRA brokerage account. Yet the court also stated that it relied on parol evidence from Molitor that supplemented the execution of the brokerage agreement, but did not contradict it. Although this reasoning appears to be inconsistent, we agree that Molitor's testimony regarding statements made by the decedent in 2015 properly could be considered under the parol evidence rule, which permits a court to consider extrinsic evidence to resolve an ambiguity in a writing. See *Shay v Aldrich*, 487 Mich 648, 667; 790 NW2d 629 (2010). The decedent's 2015 statements to Molitor pertained directly to the decedent's intent regarding the beneficiary designation for his IRA brokerage account. Thus, to the extent there was any ambiguity regarding the intended beneficiary of that account, the court could consider those statements to resolve that ambiguity. Conversely, the proposed testimony of Bradley's witnesses regarding the decedent's expressed intent shortly before his death does not establish a genuine issue of material fact because those

---

[1] In addition, the 2007 adoption agreement named two other children as primary and contingent beneficiaries. Therefore, to the extent that the 2007 adoption agreement can be considered evidence of a latent ambiguity, it is not consistent with Bradley's claim that the decedent intended for the IRA to be distributed equally among all of the children.

witnesses acknowledged that the decedent understood that his assets were subject to existing beneficiary designations, the decedent's statements did not refute the evidence that Julianne was the designated beneficiary of the IRA brokerage account, and the decedent never took appropriate steps to revoke or change that designation.

For these reasons, we reject Bradley's various claims of error.

## II. WILLIAM'S ISSUES

In his cross-appeal, William raises many of the same arguments raised by Bradley in support of his similar position that the decedent's IRA should be declared an estate asset, to be distributed in accordance with the decedent's will. We address here only William's additional arguments that have not been addressed previously.

William contends that the 2003 IRA beneficiary designation should not be considered because it does not provide that it applies to the 2012 brokerage account. This argument ignores that the 2012 account was opened as part of the decedent's existing IRA and that the 2003 beneficiary designation was associated with that IRA. Chase treated the 2003 IRA beneficiary designation as the applicable beneficiary designation for the 2012 account for that reason, but Molitor also obtained the decedent's confirmation that the 2003 beneficiary designation was the appropriate designation to use for the IRA brokerage account when that account was opened in 2012. William argues that Chase breached its contract with the decedent by failing to have the decedent sign a new adoption agreement when the brokerage account was opened in 2012. As Molitor explained, however, Chase accepted the 2003 beneficiary designation as the adoption agreement applicable to the 2012 brokerage account application. An adoption agreement is simply a form stating that there is an existing IRA to which a new investment account applies and identifies any beneficiaries. Because Chase already had the 2003 IRA beneficiary designation on file, Molitor reviewed that beneficiary designation with the decedent when the decedent opened the 2012 account, and the decedent confirmed that he did not want to make any changes, there was no need to have the decedent execute a new form.

William again argues that the probate court erred by failing to consider the decedent's statements about his intent to have his beneficiary-linked assets, including his IRA, distributed equally among his children. As explained earlier, however, those statements were merely evidence of the decedent's *unexecuted* intent to change an existing beneficiary designation, of which the decedent was aware, which is insufficient to defeat the named beneficiary's entitlement to the asset. And although a beneficiary designation in a will can be effective under MCL 700.6101(1)(a), the decedent never mentioned his IRA in his will. Further, it was appropriate to consider Molitor's testimony regarding the decedent's intent, both when he opened the account in 2012 and when that account was reviewed with Molitor in 2015, because the decedent's statements resolved any uncertainty regarding the decedent's intent with respect to the existing beneficiary designation.

William argues that the probate court should conduct an evidentiary hearing where it can properly evaluate Molitor's credibility and consider any other evidence of the decedent's intent. William speculates that Molitor's testimony might not be credible because he had a motive to cover up his mistake of failing to have the decedent sign a new adoption agreement when the

decedent opened the brokerage account in 2012. However, the evidence establishes that the decedent was aware that a beneficiary designation was in place for his IRA, and the 2003 IRA beneficiary designation is the only evidence of that designation. Molitor's testimony was supplemental evidence of the decedent's intent to apply that designation to the 2012 brokerage account. But even if Molitor's testimony is disregarded, appellants still failed to produce any competent evidence that the decedent ever changed or properly revoked his existing IRA beneficiary designation.

William also contends that there are questions of fact regarding the 2007 transaction that should have precluded summary disposition in favor of Julianne. William's reliance on the 2007 transaction is misplaced because, as explained earlier, that transaction involved a different account that was never properly opened. The adoption agreement that accompanied that account application never became effective. William cannot rely on the decedent's beneficiary designation associated with a different account that was closed approximately five years earlier as evidence of the decedent's intent with respect to the brokerage account that he opened in 2012.

Accordingly, we also reject Williams's various claims of error.

Affirmed.


                    /s/ David H. Sawyer
                    /s/ Mark J. Cavanagh