### VAN'T HOF *v.* JEMISON.

1. JOINT TENANCY—BANK ACCOUNTS—REBUTTABLE PRESUMPTION.
   The creation of a joint bank account does not conclusively establish title in the surviving depositor after the death of one of the depositors but merely creates a presumption of ownership in the survivor rebuttable by competent evidence to the contrary (3 Comp. Laws 1929, § 12063).

2. TRUSTS—CONFIDENTIAL OR FIDUCIARY RELATIONSHIP—DEFINITION.
   A confidential or fiduciary relationship is one founded on trust or confidence reposed by one person in the integrity and fidel-

---

* See 3 Comp. Laws 1929, § 15518 (Stat. Ann. § 27.2618).—RE-PORTER.

ity of another and embraces technical, fiduciary and informal relations which exist whenever one man trusts in and relies upon another.

3. GIFTS—FIDUCIARIES—JOINT BANK ACCOUNTS—UNDUE INFLUENCE —BURDEN OF PROOF.

A confidential or fiduciary relation existed between man in whose home an aged, feeble woman was cared for and the latter, where she had the utmost faith in him, and he was trusted in handling of their joint bank accounts as her agent; hence he and his wife had the burden of establishing gift to them of the balance remaining in such accounts upon death of alleged donor and that he exercised no undue influence in procuring it (3 Comp. Laws 1929, § 12063).

4. TRUSTS—TRANSACTIONS BETWEEN SETTLOR AND TRUSTEE—EQUITY.

Courts of equity regard with suspicion and scrutinize with vigilance a transaction between parties to a fiduciary relation whereby the trustee is alleged to be a donee of the one reposing the trust.

5. GIFTS—UNDUE INFLUENCE—BURDEN OF PROOF—EVIDENCE.

In suit by executrix of will of an aged, feeble testatrix who had lived at defendants' home for five months before her death for balance of a joint bank account which stood in the names of testatrix and one defendant, evidence *held*, insufficient to meet burden of proving freedom from undue influence in procurement of gift of such balance cast upon defendants who are shown to have sustained a fiduciary relation to deceased (3 Comp. Laws 1929, § 12063).

6. JOINT TENANCY—BANK ACCOUNTS—REBUTTABLE PRESUMPTION— EVIDENCE.

In suit by executrix to recover balance of two bank accounts which had stood in name of testatrix and one defendant, testimony *held*, sufficient to rebut statutory presumption in favor of survivor upon death of testatrix (3 Comp. Laws 1929, § 12063).

7. APPEAL AND ERROR—QUESTIONS REVIEWABLE—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED—EXCLUSION FROM RECORD.

Whether or not testimony relative to matters equally within knowledge of testatrix was excluded in suit by executrix to recover balance of bank accounts held jointly by testatrix and one defendant and if excluded whether or not the exclusion

was proper is not discussed where the testimony was admitted
conditionally by the trial court, record does not indicate he
ever excluded it, and appellee concedes the testimony is a proper
part of the record (3 Comp. Laws 1929, § 14219).

Appeal from Kent; Brown (William B.), J. Submitted October 13, 1939. (Docket No. 102, Calendar No. 40,429.) Decided December 19, 1939.

Bill by Martha D. Van't Hof, executrix of the estate of Lucy M. Meyers, deceased, against James Jemison and wife to obtain title to certain funds deposited in a joint bank account and for other relief. Decree for plaintiff. Defendants appeal. Affirmed.

*Emil B. Gansser* and *Linsey, Shivel, Phelps & Vander Wal,* for plaintiff.

*Dean S. Face,* for defendants.

CHANDLER, J. This is an appeal from a decree of the Kent circuit court, in chancery, awarding the proceeds of certain joint bank accounts to plaintiff, as executrix of the estate of Lucy M. Meyers. At the death of Mrs. Meyers, the bank accounts stood in the joint names of herself and the defendant James Jemison. Mr. Jemison claims that the bank accounts passed to him by survivorship.

Lucy M. Meyers died April 17, 1937, at the age of 89 years, leaving a last will and testament, which has been duly admitted to probate. She left surviving her a brother and sister, two nieces and a nephew. The will provided $3,250 in specific legacies to her relatives, the residue being left to her brother and sister. She left an estate which, according to the inventory, amounted to $6,565, not including the joint bank accounts in question. These two accounts were

in the Old Kent Bank of Grand Rapids and on the date of Mrs. Meyer's death amounted to $2,408.07 and $337.19, respectively. It is admitted that all the money in the accounts was deposited by Mrs. Meyers. The joint accounts were opened on December 17, 1936, and at that time Lucy M. Meyers and James Jemison signed upon the ledger sheets of said bank the following:

"This account is held by the undersigned in joint tenancy and is payable to both or either, or the survivor, each granting to the other irrevocable power to draw on our joint or several names."

On the day of the death of Mrs. Meyers, the defendant, James Jemison, withdrew the money in one of the joint accounts and deposited it on the same day in the joint savings account of himself and Kate Jemison, his wife, and on the day of the funeral Mr. Jemison withdrew the remaining joint account of himself and Mrs. Meyers and deposited it in the aforementioned joint savings account of himself and Kate Jemison. Later, on June 29, 1937, $2,746.26 was withdrawn from their account by defendants in cash, and $1,500 thereof placed in a safety deposit box rented in the names of the defendants jointly.

Mrs. Meyers had lived in Grand Rapids for many years, and beginning in 1926 the Jemisons became neighbors, living across the street from her until 1934 when they moved to another part of the city. They became good friends, and defendants performed certain services for her. Mrs. Meyers had an income from a pension, also certain bonds from which she received dividends, and made bank deposits of the pension and the dividends from time to time. Mr. Jemison performed the service of making deposits for her and making withdrawals from the bank. The evidence shows that whatever either of

the defendants did for the deceased they received compensation for the same at the time the service was performed. Defendant Kate Jemison assisted the deceased in the care of the household and furnishing meals, and the deceased compensated Mrs. Jemison for those services when rendered and on a basis that was mutually satisfactory to both parties at the time.

In November, 1936, the deceased moved into the Jemison household at an agreed compensation of one dollar per day, and remained there until she died. The evidence is clear that the deceased was careful and prompt about paying for all services performed for her at the time the services were rendered.

The deceased was very feeble, and physically unable to make trips to the bank. Mr. Jemison handled all her banking transactions and no conversations between them about her business affairs were ever carried on in the presence of friends or relatives.

The only evidence defendants produced in the case is the fact that the money was deposited in the joint names of Jemison and Mrs. Meyers, upon which account the statement above quoted was indorsed.

Mr. Jemison prepared a purported will for the deceased, bearing date of April 14, 1937, which made certain bequests to relatives and gave the residue to Mr. and Mrs. Jemison. Defendants make no claim under this document. Plaintiff testified that she read this instrument to Mrs. Meyers and was instructed by her to destroy the same, which she accordingly did.

Much evidence was introduced and it was found by the trial court that,

"The deceased never intended to make a gift to these defendants of this money, but that the money was placed in the joint names of Mrs. Meyers and James Jemison for the sole purpose of paying her

liabilities and for paying expenses incurred in deceased's last illness and burial.''

A decree was entered against the defendants in the sum of $2,746.26, with interest at the rate of five per cent. from April 19, 1937. From this decree, defendants appeal.

The primary question involved in this controversy is: Did the defendant, James Jemison, upon the death of Mrs. Meyers, become the owner of the joint bank accounts standing in the names of himself and said deceased, and payable to either or both or the survivor?

The bank statement and cards clearly indicate that the statute was complied with in creating the joint accounts. That statute (3 Comp. Laws 1929, § 12063 [Stat. Ann. § 23.303]) provides:

''When a deposit shall be made in any bank or trust company by any person in the name of such depositor or any other person, and in form to be paid to either or the survivor of them such deposits thereupon and any additions thereto, made by either of such persons, upon the making thereof, shall become the property of such persons as joint tenants, and the same together with all interest thereon, shall be held for the exclusive use of the persons so named and may be paid to either during the lifetime of both, or to the survivor after the death of one of them, and such payment and the receipt or acquittance of the same to whom such payment is made shall be a valid and sufficient release and discharge to said bank for all payments made on account of such deposits prior to the receipt by said bank of notices in writing not to pay such deposit in accordance with the terms thereof.''

This was the statute in effect when the joint accounts were created in December of 1936. The act was amended, becoming effective in July, 1937, but

no claim is made by either party that such amendment is applicable to the instant case.

In construing the statute, it has been held that the creation of a joint account is not conclusive as between the depositors to establish title in the survivor after the death of one of the depositors. It is a mere presumption that is created. We said in *Re Taylor's Estate,* 213 Mich. 497:

"It must, therefore, be regarded as settled by the former decisions of this court that the section (Act No. 248, § 3, Pub. Acts 1909 [3 Comp. Laws 1929, § 12063 (Stat. Ann. § 23.303)]) is a valid one, and that in the absence of competent evidence to the contrary the presumption created by it is sufficient to establish the title to the deposit in the survivor."

Again, in *Ludwig* v. *Bruner,* 203 Mich. 556, the existence of a presumption is noted in these words:

"There is not sufficient evidence in the case to lead us to conclude that the presumption created by the statute (Act No. 248, § 3, Pub. Acts 1909 [2 Comp. Laws 1915, § 8040]) has been overcome."

It now becomes necessary to consider whether or not this presumption was rebutted by the evidence presented in this case.

The plaintiff, among other things, alleges "undue influence" on the part of defendants, and introduced testimony from which she claims its existence can reasonably be inferred. There is undisputed testimony as to secretive business dealings between Mr. Jemison and Mrs. Meyers. Besides the undue influence aspect of the case, there is ample testimony to show the true relations of the parties and the purpose for which the joint accounts were created. There is evidence of statements made by Mr. Jemison to the effect that the joint accounts were created to take care of Mrs. Meyer's burial expenses. The

record includes much testimony by disinterested witnesses to indicate that the joint accounts were created for the convenience of Mrs. Meyers, who was very feeble and unable to get around without aid, in transacting her business affairs, with Jemison acting as her agent. Several witnesses also testified that the money was put in a joint account to provide for the needs of the deceased, to pay her bills, sickness and funeral expenses, and that the deceased never intended that Jemison was to be entitled to whatever balance remained in the accounts at the time of her death. The testimony as a whole is most persuasive that Mrs. Meyers never intended that the balance of the accounts should become the property of the defendants or either of them.

It is also clear from the testimony that the defendant James Jemison knew of Mrs. Meyers' intention. He attempted to have a will drawn from Mrs. Meyers which left the residue to himself and Mrs. Jemison after a few bequests and expenses had been provided for. There would have been no occasion for securing the purported will if the parties understood that the balance should go to the survivor, Mr. Jemison.

There is further testimony that tends to rebut the presumption created by the statute. It was well established that Mrs. Meyers was most careful in paying for every service rendered to her. She paid Mrs. Jemison for her room and board and for her washing and cleaning. James Jemison was likewise paid for his services. In fact, every witness who performed some service for Mrs. Meyers testified that payment was made for such service at the time it was performed. The money in the joint accounts could not have been left to Mr. Jemison in payment for services for all services had been adequately compensated for at the time of Mrs. Meyers' death.

There is no doubt that all the money deposited in the accounts belonged to Mrs. Meyers and there is no showing of a gift to the Jemisons of this amount. The defendants have relied on the statute authorizing joint bank accounts and on the ledger sheets, entered as exhibits, authorizing the bank to pay to either or the survivor of the depositors.

It is contended that the creation of a joint account conclusively vests the balance in the survivor upon the death of one depositor. This contention is not supported by authority. Former adjudications of this court are authority for the proposition that only a presumption is created which may be rebutted by competent evidence to the contrary. *In re Taylor's Estate* and *Ludwig v. Bruner, supra.*

Another point in issue is whether there was a confidential or fiduciary relationship existing between Mrs. Meyers and Mr. Jemison.

''One founded on trust or confidence reposed by one person in the integrity and fidelity of another. * * * The term is a very broad one. * * * The rule embraces both technical fiduciary relations, and those informal relations which exist whenever one man trusts in and relies upon another.'' Black's Law Dictionary (3d Ed.), Fiduciary or Confidential Relation, p. 775.

The foregoing is but one of many definitions to be found of such a relationship.

Mr. Jemison was acting in a capacity of trust and confidence in his dealings with and for Mrs. Meyers. She had the utmost faith in him. He was trusted in handling the bank accounts for her, and acted solely as her agent in these transactions. These acts would come within the definition. Such a relationship existing, the burden is upon defendants to show the validity of the gift and that no undue influence was exer-

cised by the donee. *In re Sadler's Estate,* 201 Mich. 281; *Grigg* v. *Hanna,* 283 Mich. 443. In *Guinon* v. *Guinon,* 184 Mich. 56, it was held:

"In transactions of this nature, we fully recognize the rule that they are regarded by courts of equity with suspicion and should be scrutinized with vigilance."

"Under the circumstances of this case, the burden was upon the defendant to show not only that complainant fully understood the terms, import and effect of the instrument executed, but if her intent was as expressed by the instrument, to show that such intention was not produced by undue influence exerted by himself." (*Smith* v. *Cuddy,* 96 Mich. 562.)

In *Corburn* v. *Schilling,* 138 Md. 177 (113 Atl. 761), an old man of 82 years of age was moved to the home of his niece, who was a trained nurse. She performed services for him until he died. His money was deposited in a bank account made jointly payable with the niece. The court said:

"It * * * appears from appellant's testimony that she had previously transacted many of his business matters because of his confidence in her. In such a case it is not necessary to prove actual undue influence. The law presumes it and casts the burden upon the recipient of a gift under such conditions to prove not only that it was the voluntary act of the donor uninfluenced by the donee, but also that he had the benefit of competent advice and understood what he was doing. * * * We think, weighing the testimony as it appears in the record, appellant has failed to sustain this burden."

The defendants have not met the burden of proving freedom from undue influence in this case. At most, they merely deny plaintiff's allegations charging undue influence.

Even if the issue of confidential relationship was not considered, it still seems certain that the defendants cannot prevail upon this appeal. The testimony is sufficient to rebut the presumption of the statute in favor of the survivor. In addition to the evidence of some undue influence by the Jemisons, there is an ample showing of facts which negative the intention of the parties to the joint account to create an interest in Mr. Jemison, the survivor. Because he was paid for his services, because the joint accounts were for the convenience it offered the deceased in transacting her business through Mr. Jemison as her agent, and because the balance was to be used to pay Mrs. Meyers' bills, sickness and funeral expenses, it must be held that the presumption in favor of defendant James Jemison has been rebutted.

In his brief, counsel for appellants argues:

"The court erred in excluding testimony by the defendant on matters equally within the knowledge of the deceased."

The testimony of Mrs. Jemison was admitted conditionally by the trial court. There is nothing to indicate that the court ever excluded it. The contention that the testimony was "inferentially" excluded is without adequate foundation, and since appellee concedes that the testimony is a proper part of the record, it will not be necessary to go into the problem of matters equally within the knowledge of the deceased.*

In his supplemental brief, counsel for the defendants urges that *Meigs* v. *Thayer*, 289 Mich. 680, is squarely in point. It is true that that was a case involving a joint bank account, with all the money deposited by the deceased. But in the *Meigs Case* there is nothing to indicate that the deceased did not

---

* See 3 Comp. Laws 1929, § 14219 (Stat. Ann. § 27.914).—REPORTER.

intend Mrs. Meigs to have the money, nor is there any showing of facts to rebut the presumption that the survivor was to have the balance. In fact, the deceased intended to provide for Mrs. Meigs who was a lifelong friend, without financial means. The case differs in facts surrounding the creation of the joint account, and cannot be construed as controlling in the present case.

The decree is affirmed, with costs to appellee.

BUSHNELL, SHARPE, POTTER and McALLISTER, JJ., concurred with CHANDLER, J. BUTZEL, C. J., and WIEST and NORTH, JJ., concurred in the result.

