*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* MARY MARGARET CHARTIER REVOCABLE LIVING TRUST.

---

CHRISTOPHER CHARTIER, KONNER CHARTIER, and JOSEPH CHARTIER,

        Appellees,

v

RONALD WAGNER and ALFRED VERCNOCKE, Second Successor Trustee,

        Appellants,

and

MELANIA CHARTIER, MASON CHARTIER, JOSEPH MORELLI, MICHAEL MORELLI, and MARGARET OULETTE,

        Other Parties.

UNPUBLISHED
December 19, 2019

No. 344346
St. Clair Probate Court
LC No. 2016-000076-TV

---

Before: MURRAY, C.J., and SAWYER and GLEICHER, JJ.

PER CURIAM.

Shortly before her death, Mary Margaret Chartier (Mary) changed her estate plan to leave only nominal gifts to her children and grandchildren and the bulk of her estate to her boyfriend, Ronald Wagner. Three of her sons—Christopher, Konner, and Joseph Chartier—petitioned the probate court to invalidate the trust, claiming that Wagner exerted undue influence over their mother. Wagner and trustee Alfred Vercnocke (appellants) unsuccessfully sought summary dismissal of the Chartiers' challenge pursuant to MCR 2.116(C)(8) and (10). And following a lengthy bench trial, the probate court set aside Mary's 2015 testamentary documents based on a presumption of undue influence. We affirm.

-1-

# I. BACKGROUND

Mary Chartier was 63 years old on January 15, 2016, when she suffered a fatal heart attack likely caused by the effects of acute and chronic alcoholism. Mary is survived by four sons—Michael Morelli and Christopher, Joseph, and Konner Chartier—two daughters-in-law, four grandchildren, and an ex-husband. In 2011 or 2012, Mary met Ronald Wagner online. In 2012, Wagner moved to Michigan to be with Mary. Mary lived in a home in Grosse Pointe with Konner, who was then a minor, and Joseph, who had been rendered a quadriplegic in a Jet Ski accident. Wagner stayed at a farm owned by Mary in St. Clair County. Initially, Mary visited Wagner at the farm on weekends. In 2014, Mary sold her Grosse Pointe home, Konner and Joseph moved in with their father, and Mary moved to the farm.

Mary's family and friends expressed concern about her relationship with Wagner. Wagner was unemployed and Mary financially supported him. Mary had battled alcoholism throughout her life but had been sober for an extended period when she met Wagner. Wagner drank around Mary and Mary relapsed. Wagner exacerbated the problem by supplying Mary with alcohol. Mary's sons stopped visiting her because Wagner was hostile and even violent toward them. Neighbors reported that Wagner ended Mary's previous welcoming open-door policy. Longtime friends and relations noted that Mary would not speak to them on the phone when Wagner was around, and would call or text at odd hours. And then Mary became ill; she lost a significant amount of weight, needed assistance to walk, and let her personal hygiene go. Yet, Mary continued to drink and had a blood alcohol level of 0.26 at the time of death.

Mary had established a revocable living trust in 2008. That trust is not part of the record, but several witnesses testified that Mary had always expressed her intent to leave her estate to her children. On October 20, 2015, Mary executed a new trust, revoking her 2008 estate plan. Mary designated Wagner as her successor trustee, but he resigned the post in February 2016 and Mary's second successor trustee (and accountant), Alfred Vercnocke, took the reins. Mary essentially disinherited her family, leaving $1,000 to each of her children, $500 to each of her grandchildren, and a watch to a granddaughter. The remainder of Mary's estate flowed to Wagner.

On February 10, 2016, the Chartiers filed a probate court petition to invalidate Mary's 2015 trust based on undue influence and lack of testamentary capacity.[1] Following extensive discovery, appellants sought summary dismissal of the petition under MCR 2.116(C)(8) and (10). The probate court denied the motion and the matter proceeded to a seven-day bench trial. The court ultimately invalidated the 2015 trust, finding that the evidence "clearly establishe[d] a presumption of undue influence" that appellants "did not successfully rebut."

Appellants now appeal both the summary disposition ruling and the court's ultimate judgment.

---

[1] Michael Morelli was in prison at the time and did not join the petition.

## II. STANDARDS OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *In re Capuzzi Estate*, 470 Mich 399, 402; 684 NW2d 677 (2004). Summary disposition may be granted under MCR 2.116(C)(8) when a complaint fails to state a claim for which relief can be granted. A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim by the pleadings alone. *Patterson v Kleiman,* 447 Mich 429, 432; 526 NW2d 879 (1994). All well-pleaded factual allegations are accepted as true, as well as any reasonable inferences or conclusions that can be drawn from the allegations. *Peters v Dep't of Corrections*, 215 Mich App 485, 486; 546 NW2d 668 (1996). Summary disposition is appropriate only if the alleged claim is so clearly unenforceable as a matter of law that no factual development could justify recovery. *Patterson*, 447 Mich at 432.

A motion under MCR 2.116(C)(10) tests the factual support for a claim. A court must consider the pleadings, affidavits, depositions, admissions, and any other documentary evidence submitted by the parties in the light most favorable to the nonmoving party to determine if a genuine issue of material fact exists. MCR 2.116(G)(5); *Maiden v Rozwood*, 461 Mich 109, 118-120; 597 NW2d 817 (1999). Summary disposition should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Babula v Robertson*, 212 Mich App 45, 48; 536 NW2d 834 (1995).[2]

Following the bench trial, we review for clear error the probate court's factual findings. *In re Bennett Estate*, 255 Mich App 545, 549; 662 NW2d 772 (2003). "A finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *Id*.

## III. UNDUE INFLUENCE

This Court recently described an undue influence claim in *In re Monier Khalil Living Trust*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 341142); slip op at 9:

> A presumption of undue influence arises when there is evidence of (1) a confidential or fiduciary relationship between the grantor and a fiduciary, (2) the

---

[2] In their brief on appeal, appellants rely in part on an outdated and overruled summary disposition standard, arguing that under MCR 2.116(C)(10) the trial court cannot summarily dismiss a case if a record "could be developed that would leave open an issue upon which reasonable minds could differ." Twenty years ago, the Supreme Court explicitly rejected this approach. See *Smith v Globe Life Ins Co*, 460 Mich 446, 455 n 2; 597 NW2d 28 (1999). We recognized the correct standard under the 1985 Court Rules more than a decade ago in *Grand Trunk WR, Inc v Auto Warehousing Co*, 262 Mich App 345, 350; 686 NW2d 756 (2004). Nevertheless, this Court continues to receive briefs advocating our application of this outdated, overruled, and obviously inapplicable standard. We urge appellate counsel to update their brief banks or their legal research methods to avoid citing to summary disposition standards that were set aside by the 1985 Court Rules.

fiduciary or an interest he represents benefits from a transaction, and (3) the fiduciary had an opportunity to influence the grantor's decision in that transaction. *Kar v Hogan*, 399 Mich 529, 537; 251 NW2d 77 (1976), overruled on other grounds in *In re Estate of Karmey*, 468 Mich 68; 658 NW2d 796 (2003). When the presumption is established, the party seeking to enforce the trust must offer other evidence to rebut the presumption. *Id*. at 542

. . . "[A] fiduciary relationship arises from the reposing of faith, confidence, and trust and the reliance of one upon the judgment and advice of another." *Vicencio v Ramirez*, 211 Mich App 501, 508; 536 NW2d 280 (1995).

A fiduciary relationship also exists if one acts as an agent for another, i.e., as " 'a person having express or implied authority to represent or act on behalf of another person.' " *Khalil*, ___ Mich App at ___, slip op at 9, quoting *Law Offices of Jeffrey Sherbow, PC v Fieger & Fieger, PC*, 326 Mich App 684, 699; 930 NW2d 416 (2019).

The burden of establishing undue influence is typically on the party asserting it. *In re Mardigian Estate*, 502 Mich 154, 160; 917 NW2d 325 (2018) (MARKMAN, J.). The rebuttable presumption that arises from a fiduciary relationship "does not shift the ultimate burden of proof; rather, that burden always remains with the contestant." *Id*. at 164. This rule has been codified in the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq*. *Mardigian*, 502 Mich at 164-166; MCL 700.3407(1)(c) and (d). The presumption itself has no weight as evidence, but it establishes a prima facie case in the absence of testimony on the issue. *Mardigian*, 502 Mich at 164. Therefore, regardless of whether the rebuttable presumption of undue influence applies in a given case, the ultimate burden of persuasion remains on the party contesting a document on the basis of undue influence. *Id*. at 165.

## A. MCR 2.116(C)(8)

Wagner did not specifically allege in his motion for summary disposition under MCR 2.116(C)(8) that he did not receive notice that the Chartiers would rely on a presumption of undue influence arising from a confidential or fiduciary relationship. However, at the hearing on Wagner's motion, the parties addressed whether there was a genuine issue of material fact regarding the existence of a fiduciary relationship to defeat summary disposition under MCR 2.116(C)(10). The Chartiers also requested the opportunity to amend their pleadings to conform to the evidence obtained during discovery if the court believed that the petition, as filed, was inadequate. The probate court then found that the petition sufficiently alleged a claim for undue influence to avoid summary disposition under MCR 2.116(C)(8).

The Chartiers' petition contained the following allegations in support of their undue influence claim:

> 19. Following the divorce, Mary maintained a close and loving relationship with Petitioners.

> 20. In approximately 2012, Mary began dating Mr. Wagner.

-4-

21. Over the course of the time of the relationship with Mr. Wagner, Mary became more and more distant with her children and her friends.

22. Mary had a drinking problem known [sic] to binge drink to deal with her emotions.

23. In the months leading up to her death, Mary's contact with her children became more and more erratic. She would call Cris in the late evening and early morning hours in a drunken stupor. When Cris tried to call her during daytime hours, she would not answer the phone.

24. Petitioners believed that Mr. Wagner enabled Mary's reliance on alcohol causing her to become more and more detached and isolated from her children.

The petition also alleged that Mary changed her estate plan because of Wagner's undue influence:

26. Mary was unduly influenced by Mr. Wagner when she revised her estate plan to make nominal provisions for her children. Mr. Wagner subjected Mary to threats, misrepresentations, undue flattery, fraud, or physical or mental coercion sufficient to overpower volition, destroy free agency, and impel Mary to act against her own inclination and free will.

27. Petitioners believe that the provisions of the Original Trust more than likely provide for Petitioners.

In *Taylor v Klahm*, 8 Mich App 516, 517-518; 154 NW2d 529 (1967), this Court addressed the sufficiency of pleading a claim for undue influence:

Finding ["confidential or fiduciary relation"] and a resulting benefit to the fiduciary therefrom rebuttably establishes a presumption of undue influence. Although undue influence is a species of fraud and as such the facts should be alleged with particularity defendants did not make a motion for a more definite statement nor did they express any other dissent on the record as to this matter prior to the introduction of proofs by plaintiff. The defendants should have expected virtually any method of proving the allegation of undue influence. Furthermore, the substance of the alleged improper transactions is apparent from the pleadings, and therefore an attempt to prove undue influence by use of the presumption was permissible. [Citation omitted.]

Pursuant to *Taylor*, the Chartiers were required to allege facts in support of their undue influence claim with particularity, but were not required to specifically allege reliance on a presumption of undue influence. Rather, if the petition adequately stated a claim for undue influence, Wagner should have expected any method of proving that allegation. The presumption of undue influence is only a means for establishing a prima facie case of undue influence.

Michigan is a notice-pleading state and "[a]ll that is required is that the complaint set forth 'allegations necessary reasonably to inform the adverse party of the nature of the claims the adverse party is called on to defend[.]' " *Johnson v QFD, Inc*, 292 Mich App 359, 368; 807 NW2d 719 (2011), quoting MCR 2.111(B)(1). "[N]otice pleading and key documents are typically sufficient to survive summary disposition under MCR 2.116(C)(8)," as the plaintiff will generally not have all of the evidence available when filing the complaint. *Tomasik v Michigan*, 327 Mich App 660, 677; ___ NW2d ___ (2019), lv pending.

The Chartiers alleged in the petition that Wagner overcame Mary's volition and free will to get her to change her estate plan to benefit him and cited Wagner's close relationship with Mary in the years preceding her death, Wagner's interference with Mary's other relationships, and friends and enabling Mary's alcoholism. These allegations amply sufficed to state a claim for undue influence and reasonably informed Wagner that the Chartiers were relying on Wagner's personal relationship with Mary and his exploitation of her alcoholism to unduly influence her. The Chartiers did not need to expressly identify the *presumption* of undue influence in their pleadings to survive summary disposition.

Even if the pleadings were insufficient to state a claim, the court could have granted the Chartiers an opportunity to amend the complaint based on "the evidence then before the court." MCR 2.116(I)(5). As noted in the next section, sufficient facts created a triable issue for the factfinder. Therefore, dismissal of the Chartiers' petition would not have been warranted.

## B. MCR 2.116(C)(10)

In his (C)(10) motion, Wagner argued that the Chartiers failed to present any evidence that he unduly influenced Mary to change her trust in October 2015. He emphasized that Konner and Christopher had very little contact with Mary during the year before her death, so they had no knowledge whether she was acting under any influence by Wagner. In response, the Chartiers argued that a presumption of undue influence arose because a confidential relationship existed between Mary and Wagner, who were involved in a romantic relationship. They relied on evidence that as Mary's health declined and her alcoholism worsened, Wagner assumed responsibilities related to her healthcare, financial matters, and legal affairs, and he also isolated Mary from family and friends, causing her to become solely dependent on him.

At the motion hearing, the Chartiers advised the court that they had just recently received a copy of the legal file of James Dubay, the attorney who assisted Mary between June and October 2015 to amend her estate plan. That file, the Chartiers contended, showed that Wagner accepted an appointment as Mary's patient advocate in May 2015. They emphasized that even without this evidence, Wagner had acknowledged in his deposition that Mary executed a medical form provided by the hospital at that time, and he admitted being involved in a confidential relationship with Mary. In denying Wagner's MCR 2.116(C)(10) motion, the probate court refused to consider the newly produced evidence, but concluded that the remaining evidence established a genuine issue of material fact whether Mary's restated trust was the product of her own free will and volition, or whether it was the result of undue influence exerted by Wagner.

Undue influence can be established by showing "that the grantor was subjected to threats, misrepresentation, undue flattery, fraud, or physical or moral coercion sufficient to overpower volition, destroy free agency, and impel the grantor to act against the grantor's inclination and free will." *In re Erickson Estate,* 202 Mich App 329, 331; 508 NW2d 181 (1993). However, "[m]otive, opportunity, or even ability to control, in the absence of affirmative evidence that it was exercised, is not sufficient." *Id.* As noted, a presumption of undue influence can arise "when there is evidence of (1) a confidential or fiduciary relationship between the grantor and a fiduciary, (2) the fiduciary or an interest he represents benefits from a transaction, and (3) the fiduciary had an opportunity to influence the grantor's decision in that transaction." *Khalil,* ___ Mich App at ___; slip op at 9. Where the presumption is established, it

> creates a "mandatory inference" of undue influence, shifting the burden of going forward with contrary evidence onto the person contesting the claim of undue influence. However, the burden of persuasion remains with the party asserting such. If the defending party fails to present evidence to rebut the presumption, the proponent has satisfied the burden of persuasion. [*In re Peterson Estate,* 193 Mich App 257, 260; 483 NW2d 624 (1991) (quotation marks and citation omitted.]

Contrary to appellants' assertion, the probate court did not rely solely on a presumption of undue influence to find that there was a genuine issue of material fact whether Mary was unduly influenced to change her trust. Although the court acknowledged that certain facts can give rise to a presumption, it thereafter discussed the body of available evidence and concluded that there were genuine issues of material fact regarding undue influence, without regard to any presumption. On de novo review, we agree that the evidence also raised a genuine issue of material fact regarding the existence of a confidential or fiduciary relationship to support applying the presumption.

In *First Nat'l Bank & Trust Co of Marquette v Albert,* 66 Mich App 252, 261; 238 NW2d 827 (1975), this Court held that a fiduciary relationship existed between the decedent and his sons where one of the sons was a doctor who treated his father and a power of attorney was issued to another son. This Court stated that "[a] fiduciary relationship also exists where . . . one who is enfeebled by poor health and incapable of attending to his business affairs, relies on another to manage his business affairs." *Id.*

In *Van't Hof v Jemison,* 291 Mich 385, 387-388; 289 NW 186 (1939), an elderly woman, Lucy Meyers, opened joint bank accounts with the defendant. The defendant performed many services for Meyers and took her into his home before her death. The defendant also handled all banking transactions for Meyers because she was very feeble and unable to go to the bank. *Id.* at 388-389. The Court was required to determine if the account was a jointly held asset of both parties, or whether the defendant was named on the account only to enable him to tend to Meyers's financial affairs. *Id.* at 390-392. In the context of addressing whether a confidential or fiduciary relationship existed between Meyers and the defendant, the Court stated:

> Mr. Jemison was acting in a capacity of trust and confidence in his dealings with and for Mrs. Meyers. She had the utmost faith in him. He was trusted in handling the bank accounts for her, and acted solely as her agent in

these transactions. These acts would come within the definition. Such a relationship existing, the burden is upon defendants to show the validity of the gift and that no undue influence was exercised by the donee. [*Id*. at 393-394.]

In *In re Jennings' Estate,* 335 Mich 241, 243-244; 55 NW2d 812 (1952), the Court stated:

It is urged that because defendant for a number of years looked after the testator's business and property, collecting rents, dividends and mortgage payments for him, and paying taxes, repair bills, et cetera, a fiduciary relationship existed between them, giving rise to a presumption of undue influence on defendant's part. We are mindful of the holdings in *Re McMaster's Estate*, 163 Mich 210; and *Scheibner v Scheibner*, 220 Mich 115; and others of like import, which plaintiffs cite as authority for their claim of a fiduciary relationship here. At the same time, it is to be noted that in *Re Cottrell's Estate*, 235 Mich 627; and *In re Lacroix's Estate*, 265 Mich 59, it was held that the mere assisting with and conducting of testator's business affairs does not give rise to a fiduciary relationship. We think the term should be held to mean what the word "fiduciary" implies and that the relationship only exists when there is a reposing of faith, confidence and trust and the placing of reliance by one upon the judgment and advice of another. No such situation was established here.

A fiduciary relationship requires more than just assistance with the financial affairs of another; it also requires that there be a reposing of trust or confidence in the judgment or advice of another. See also *In re Karmey Estate,* 468 Mich 68, 74-75 nn 2-3; 658 NW2d 796 (2003).

In this case, the Chartiers presented evidence that Wagner did more than merely assist Mary with various matters. Evidence was presented that Mary's health significantly deteriorated while she was living with Wagner, to the point that she was unable to handle matters alone. Evidence was also presented that Wagner isolated Mary from her friends and family and enabled her substance abuse, such that she became reliant on Wagner to handle and manage her healthcare and legal and financial matters, thereby requiring her to repose trust and confidence in Wagner. Moreover, Wagner admitted in his deposition that Mary chose him as her patient advocate during a hospitalization, demonstrating that Mary had placed trust or confidence in his judgment. For these reasons, the probate court did not err by denying Wagner's motion for summary disposition under MCR 2.116(C)(10).

C. TRIAL

Appellants also argue that the probate court erred by finding that the presumption of undue influence applied in this case and that they failed to successfully rebut that presumption. The burden of establishing undue influence is on the party asserting it. *Mardigian*, 502 Mich at 160. As explained earlier, the rebuttable presumption that arises from a fiduciary relationship "does not shift the ultimate burden of proof; rather, that burden always remains with the contestant." *Id.* at 164; see also MCL 700.3407(1)(c) and (d). The presumption itself has no weight as evidence, but it establishes a prima facie case in the absence of testimony on the issue. *Mardigian*, 502 Mich at 164. Therefore, regardless of whether the rebuttable presumption of

undue influence applies in a given case, the ultimate burden of persuasion remains on the party contesting a document on the basis of undue influence. *Id*. at 165.

The probate court found that "[t]he evidence presented clearly establishes a presumption of undue influence by [Wagner] in Mary's completion of the Restatement [of her trust]." The court found that Mary and Wagner were in an intimate relationship and that Mary was dependent on Wagner for assistance in maintaining her home and personal health. The court also found that Wagner played a significant role in Mary's dealings with Dubay and had the opportunity to influence her estate decision. Therefore, the probate court applied a presumption of undue influence, but noted that the burden of persuasion remained with the Chartiers as petitioners. After a detailed discussion of the evidence, the court found that Wagner "did not successfully rebut the presumption of undue influence." These findings were not clearly erroneous.

Wagner argues that the evidence showed that Mary freely decided to change her trust, and that she explained her reason based on bad blood with her children. Although Wagner argues that Mary felt abandoned by her family, the probate court found that Wagner "actively worked to undermine and destroy Mary's relationships with her family and friends." Numerous witnesses described how Wagner was hostile or confrontational toward them, made them feel unwelcome, and restricted their contacts and communication with Mary. Several witnesses testified that Mary would not respond to calls, but would sometimes call late at night or early in the morning and then often abruptly end the conversation. The probate court found that Mary was "not comfortable with her situation," and had disclosed to others that she intended to end her relationship with Wagner because she recognized that it was impacting her other relationships. The court also made extensive findings regarding the process in which Mary's estate plan changes were made. The court found that Wagner was actively involved in the process, and "had a much more significant role in the later contacts," which included "initiating the phone calls, dropping off the retainer agreement, writing directions on the agreement, and providing his cell phone number as the point of contact."

The probate court rejected Wagner's argument that Mary had retained her independence until her death. The court noted that witnesses had described Mary's feeble and frail condition in the year preceding her estate plan changes, and many were shocked by her uncharacteristically unkempt appearance. The court also found that Mary wanted to maintain relationships with her family and friends and disliked her situation, but felt helpless and unable to remedy the situation.

The fact that a testator was advised, persuaded, or solicited does not prove undue influence so long as he or she was capable of acting on his or her own motives and remained free to make his or her own decision. *In re Hannan's Estate,* 315 Mich 102, 123; 23 NW2d 222 (1946). Undue influence will only vitiate a will where the testator's free agency is overcome so that the will represents not the testator's desires, but those of someone else. *Id*. In *In re Sprenger's Estate*, 337 Mich 514, 521-523; 60 NW2d 436 (1953), the Court explained:

> "Undue influence" exercised upon one who executes a will may become the basis for finding the will invalid if that influence took from the testator his right to freely exercise his discretion in disposing of his property. Such influence is not to be presumed but must be proved by the person seeking to have the will declared invalid and cannot be found in the desire of some person or persons to

influence the testator nor in the fact that the opportunity existed for the exercise of such influence. It exists as a matter of law only where the influence is actually exerted and amounts to a constraint depriving the testator of his free agency.

"Undue influence" to vitiate a will must have been such as to amount to force and coercion, destroying the free agency of the testator, and there must be proof that the will was obtained by this coercion. Undue influence cannot be presumed, but must be proved and in connection with the will and not with other things. A will may not be set aside on the ground of undue influence unless such influence amounted to a degree of constraint such as the testator was too weak to resist and such as deprived him of his free agency and prevented him from doing as he pleased with his property. Neither advice, nor arguments, nor persuasion will vitiate a will made freely from conviction, though such will might not have been made but for such advice or persuasion. Undue influence is a species of fraud and, like fraud, must remain undefined by the courts. All that can be done is to lay down certain general principles, and what is said above embraces those general rules which have been adduced from adjudicated cases.

"Undue influence" cannot be predicated upon opportunity alone, nor upon a disposition of property not in accord with the statutes of descent. [Quotation marks and citations omitted.]

Vercnocke and Dubay testified that Mary provided rational reasons for restating her trust and explained why she decided to leave only nominal amounts to her children and grandchildren, and they believed that her estate plan changes were the product of her own volition and free will. However, Vercnocke and Dubay were not aware of all of the circumstances surrounding Mary's relationship with Wagner. Mary initially met with Dubay in June 2015 to discuss her estate plan, but did not follow up until several months later. Moreover, it was Wagner who reinitiated the contacts with Dubay to formalize changes to Mary's estate plan. The evidence supports that Wagner was "driving the process" to arrange and execute the estate plan changes. Moreover, Vercnocke and Dubay were not aware of the extent to which Wagner had isolated Mary from family and friends or Wagner's role in encouraging and enabling Mary's substance abuse, highly relevant factors affecting Mary's ability to freely exercise her own will and volition.

Wagner offered letters to support his position that he and Mary had a loving relationship. However, the probate court discounted the letters as they were written early in the relationship, before Wagner moved in with Mary. The probate court also discounted Wagner's testimony that he and Mary were engaged. As the probate court noted, Mary never mentioned any engagement to family members or close friends, no wedding date was set, and Mary described Wagner to others only as a "good friend" or boyfriend, not a fiancé. Indeed, several witnesses testified that Mary expressed her desire to end her relationship with Wagner after 2013.

Wagner argues that he presented witnesses to attest to the loving relationship that he and Mary shared, but some of these witnesses had only casual and infrequent contact with the couple. Conversely, the Chartiers presented numerous witnesses who had been Mary's close and longstanding friends, and their testimony was consistent in demonstrating Wagner's involvement in enabling Mary's alcohol abuse and his efforts to control and isolate her from others.

Having carefully reviewed the record, we are not persuaded that the probate court clearly erred by finding that appellants did not rebut the presumption of undue influence by Wagner.

## IV. EVIDENTIARY ISSUES

Appellants also challenge the probate court's admission at trial of text messages on a witness's cell phone as those messages were not produced during discovery. They further contend that the Chartiers should have produced during discovery an investigative report compiled in preparation of trial because it revealed their pretrial knowledge of the messages. We review for an abuse of discretion a lower court's evidentiary decisions, *In re Albring*, 160 Mich App 750, 758; 408 NW2d 545 (1987), and its crafting of a remedy for a discovery violation. *Hardrick v Auto Club Ins Ass'n*, 294 Mich App 651, 659; 819 NW2d 28 (2011). We review de novo whether production of evidence is barred by the work-product privilege, but any underlying findings of fact are reviewed for clear error. *D'Alessandro Contracting Group, LLC v Wright*, 308 Mich App 71, 76; 862 NW2d 466 (2014).

At trial, Debra Block testified that she discovered that her cell phone still contained a series of text messages from Mary. Wagner had previously requested discovery of any documents that the Chartiers intended to present at trial. The text messages were not produced during discovery. The Chartiers' counsel denied knowing about the series of text messages until that day. The probate court overruled Wagner's objection to the introduction of the text messages, but provided Wagner's counsel with an opportunity to review the messages on Block's phone and an opportunity to cross-examine Block regarding the messages. When Block stated that she might have mentioned the text messages to an investigator, Wagner argued that he should also be able to review the investigator's report. The probate court determined that the investigator's report was not discoverable because it was protected work product.

Initially, we agree that the text messages, as electronically stored information, qualify as "documents" for purposes of discovery, and therefore were subject to Wagner's discovery request for production of documents. MCR 2.302(B)(1); MCR 2.310(B)(1)(a); see also *Johnson v State*, 347 Ga App 831, 844; 821 SE2d 76, 87 (2018) (text messages by the defendant constituted original documentary evidence of the defendant's communications). However, the probate court had discretion to fashion an appropriate remedy for the Chartiers' failure to produce this evidence. *Hardrick*, 294 Mich App at 659. When sanctioning a party for a discovery violation, the court should consider the following factors:

> (1) whether the violation was wilful or accidental; (2) the party's history of refusing to comply with discovery requests (or refusal to disclose witnesses); (3) the prejudice to the defendant; (4) actual notice to the defendant of the witness and the length of time prior to trial that the defendant received such actual notice; (5) whether there exists a history of plaintiff's engaging in deliberate delay; (6) the degree of compliance by the plaintiff with other provisions of the court's order; (7) an attempt by the plaintiff to timely cure the defect; and (8) whether a lesser sanction would better serve the interests of justice. [*Dean v Tucker*, 182 Mich App 27, 32-33; 451 NW2d 571 (1990) (citations omitted).]

The record discloses that any discovery violation was not willful because Block did not mention having the series of text messages on her phone until the day she testified at trial. Appellants did not argue below, and do not claim on appeal, that there was a history of other discovery violations. Moreover, after Block disclosed the text messages, the probate court allowed Wagner's counsel to review her phone to see the actual messages. Counsel later requested a short break during trial to further review the messages, which the probate court granted. There is no indication that the number of messages to review was large. The probate court also noted that Wagner had not deposed Block, which would have given him an opportunity to learn about the messages before trial. In response to Wagner's motion for summary disposition, the Chartiers submitted an affidavit from Block, stating in pertinent part:

> 4. Mary Chartier reached out to me asking for help, saying that she needed to see me alone.

> 5. Mary Chartier told me that Ronald Wagner was possessive and that she knew she lost all of her friends and family over him. She acknowledged that Ronald Wagner had come between her and her children.

At a minimum, appellants were aware that Block had conversations with Mary about Wagner. If they wanted to know more, they could have deposed her before trial. Given Block's affidavit, appellants cannot claim that they were unfairly surprised by the text messages. Indeed, even without the actual messages, Block would have been free to testify regarding her recollection of the text exchanges. The actual messages allowed Block to accurately recount what was said. Under these circumstances, the probate court's decision to allow the introduction of the text messages, subject to Wagner's opportunity to review them and cross-examine Block, was a reasonable response to any discovery violation. Further, Wagner has not explained how having earlier notice of the messages would have altered any trial strategy.

Appellants argue that the probate court erred by ruling that the investigator's report was protected work product.

> The touchstone of the work-product doctrine is whether notes, working papers, memoranda or similar materials were prepared in anticipation of litigation. If they were, this work product is cloaked with a qualified immunity without regard to whether it was prepared by an attorney or by some other person and whether such other person was engaged by an attorney. Work product is prepared in anticipation of litigation if the prospect of litigation is identifiable, either because of the facts of the situation or the fact that claims have already arisen. Thus, the doctrine does not require that an attorney prepare the disputed document only after a specific claim has arisen. The doctrine does require, however, that the materials subject to the privilege pertain to more than just objective facts. [*D'Alessandro Contracting*, 308 Mich App at 77-78 (quotation marks, citations, and alterations omitted).]

The probate court examined the investigator's report for the limited purpose of determining who requested its preparation. The face of the report indicated that it was prepared at the request of the Chartiers' attorney. The report's first page showed that it was sent to the

Chartiers' attorney, and was labeled: "Attorney-Client Privileged—Attorney Work Product." The first page also states that the investigator was contacted by the Chartiers' attorney in March 2016, shortly after Mary's death, and counsel asked the investigator to conduct a background check on Wagner and to interview a list of persons, which Christopher had supplied. The record clearly discloses that although Christopher supplied a list of potential witnesses to interview, it was the attorney who requested the investigation and report in anticipation of litigation. Therefore, the probate court did not err by finding that the report was privileged.

Appellants contend that the probate court should have allowed discovery of the investigator's report, despite that its protected status, based on substantial need. Even if material qualifies as protected work product, a party may obtain discovery of the material upon "a showing that the party seeking discovery has substantial need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means." MCR 2.302(B)(3)(a). In this case, appellants' only cited reason for wanting the report was to discover Block's communication about the text messages. As Block was identified on the Chartiers' witness list, the appellants could have deposed Block to determine what information she could provide about her communications with Mary, including if she still had any text messages. Because appellants could have obtained this information without undue hardship, they were not entitled to discovery of the investigator's report.

We affirm. The Chartiers, as prevailing parties, may tax costs pursuant to MCR 7.219.

/s/ Christopher M. Murray
/s/ David H. Sawyer
/s/ Elizabeth L. Gleicher

-13-