*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ESTATE OF CAROLYNN ANN HORTON.

THOMAS HORTON and ROBERT ALAN
BIECHLER, Copersonal Representatives of the
ESTATE OF CAROLYNN ANN HORTON,

      Plaintiffs-Appellants,

v

THERESA JANNARO,

      Defendant-Appellee.

UNPUBLISHED
May 25, 2023

No. 362550
Macomb Probate Court
LC No. 2021-239152-CZ

Before: LETICA, P.J., and BORRELLO and RIORDAN, JJ.

PER CURIAM.

Plaintiffs appeal as of right the probate court's order granting defendant's motion for summary disposition under MCR 2.116(C)(10). Plaintiffs argue that the probate court erred by finding that there was no genuine issue of material fact that plaintiffs did not establish a presumption of undue influence with respect to defendant's designation as the sole beneficiary of the decedent's individual retirement account (IRA). For the reasons set forth in this opinion, we reverse and remand.

## I. BACKGROUND

The decedent, Carolynn Ann Horton, was 75 years old at the time of her death on July 12, 2021. Plaintiffs, Thomas Horton and Robert Biechler, are Carolynn's sons and the copersonal representatives of her estate. Gary Horton, who was Carolynn's husband and plaintiffs' stepfather, predeceased Carolyn by less than five months, having passed away on February 25, 2021. After Gary's death, Carolynn visited one of the local bank branches of JP Morgan Chase & Co. (Chase), and met with private client advisor Damian Juncaj on two occasions to initiate and complete the funds rollover process from a retirement account that had been held by Gary to Carolynn's newly

-1-

created IRA. Carolynn designated defendant as the sole beneficiary of her IRA, which apparently had a value of approximately $220,000 or more at the time of Carolynn's death.

Defendant testified at her deposition that she first met Carolynn about eight years earlier at a yard sale at defendant's house. Eventually, defendant began assisting Carolynn and Gary with housekeeping tasks for approximately three to six hours a week. They did not have a set agreement on compensation, which sometimes involved payments of $20 to $50, lunch, or "gas in the car." Defendant also went shopping with Carolynn and helped her bring large purchases home. Additionally, defendant and her husband sometimes went out to dinner with Carolynn and Gary.

Before Gary's death, Gary handled the couple's finances. After his death, Thomas and his wife initially helped Carolynn with paying her bills. However, defendant testified that Carolynn told her that she did not like how they were paying the bills and asked defendant to take over the task instead. Defendant agreed. At first, defendant wrote the checks and Carolynn signed them. Defendant was subsequently added to Carolynn's checking account to streamline the process. Defendant explained:

> *Q*. Do you know the reason why you were added to the account?
>
> *A*. It was easier for me to pay the bills when I just wrote the checks and everything right then and there.
>
> *Q*. Okay. How did it come around that -- how did it come to be that it was determined that it would be easier for you to do that? Is this something you had a conversation with Carol?
>
> *A*. We went to the bank. Carol wanted to get some money out, and Carol was talking to the bank teller. And the bank teller told her it would be easier, if I was on the account, for me to write the checks instead of having two different writings on the check.

Defendant acknowledged she was authorized to write checks from Carolynn's account without first obtaining Carolynn's permission. However, defendant testified she never withdrew any money for her own benefit from Carolynn's account, that she and Carolynn were friends, and that Carolynn trusted her. Defendant also had access to Carolynn's Social Security number so she could resolve issues with bills as necessary.

Defendant began spending more time with Carolynn after Gary's death. She estimated that she spent approximately 20 hours a week with Carolynn, primarily watching television, as well as talking, cleaning, and paying bills.

Defendant assisted Carolynn in completing the paperwork for rolling over Gary's retirement account following his death, and defendant drove Carolynn to both of the appointments with Damian regarding Carolynn's new IRA. There was evidence defendant attended both meetings, although she claimed to have waited outside for the first half hour of the first meeting. Damian testified that defendant was present during the entirety of both meetings. At the second meeting, on July 6, 2021, Carolynn signed the paperwork to complete the process of opening her

new IRA account with the money from Gary's retirement account. Carolyn also designated defendant as the beneficiary of the new IRA at the July 6 meeting.

Carolynn died six days later. That same day, defendant went to the bank and informed bank personnel of Carolynn's death. According to defendant, it was at this point that she first learned that she was the beneficiary of Carolynn's IRA.

Plaintiffs initiated this action alleging that defendant procured her designation as the sole beneficiary of Carolynn's IRA through undue influence. Defendant eventually moved for summary disposition under MCR 2.116(C)(10), arguing that there was no genuine question of material fact that Carolynn and defendant did not have a confidential or fiduciary relationship and that plaintiffs thus could not establish a presumption of undue influence. Plaintiffs opposed defendant's motion and argued that there was evidence creating genuine questions of fact regarding undue influence. Plaintiffs argued that a confidential or fiduciary relationship existed because there was evidence that Carolynn placed complete trust in the faithful integrity of defendant over multiple aspects of Carolynn's finances, including her checking account, bill paying, and IRA rollover.

At the conclusion of the hearing on the motion, the probate court granted summary disposition in defendant's favor as follows:

> Thank you. All right, I'm going to grant the Motion for Summary Disposition. I do find that there is no presumption of undue influence in this case whatsoever. Theresa was not in a fiduciary capacity. Helping somebody write bills doesn't make them dependent on them. It doesn't put them in a fiduciary capacity. I mean the fact is that if Theresa didn't assist Carolyn paying the bills I'm sure she would have just found somebody else to help her write out the checks.
>
> Pursuant to the *Estate of Karmey*,
>
> > "To establish undue influence it must be shown that the granter was subjected to threats, misrepresentation, undue flattery, fraud, or physical or moral coercion sufficient to overpower volition, destroy free agency and impel the granter to act against his inclination and free will."
>
> That's a big burden and it's just not met in this case. So, I'm granting the Motion.

An order was entered granting summary disposition for the reasons stated on the record. This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews de novo a lower court's decision whether to grant a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Summary disposition pursuant to MCR 2.116(C)(10) is appropriate when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is

entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). When considering a motion under MCR 2.116(C)(10), a court must "consider all evidence submitted by the parties in the light most favorable to the party opposing the motion," and the court may only grant the motion if "there is no genuine issue of material fact." *El-Khalil*, 504 Mich at 160. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted).

## III. ANALYSIS

Generally,

[t]o establish undue influence it must be shown that the grantor was subjected to threats, misrepresentation, undue flattery, fraud, or physical or moral coercion sufficient to overpower volition, destroy free agency and impel the grantor to act against his inclination and free will. Motive, opportunity, or even ability to control, in the absence of affirmative evidence that it was exercised, are not sufficient. [*In re Karmey Estate*, 468 Mich 68, 75; 658 NW2d 796 (2003).]

However, a

presumption of undue influence arises upon the introduction of evidence that would establish (1) the existence of a confidential or fiduciary relationship between the grantor and a fiduciary, (2) the fiduciary, or an interest represented by the fiduciary, benefits from a transaction, and (3) the fiduciary had an opportunity to influence the grantor's decision in that transaction. [*In re Gerald L Pollack Trust*, 309 Mich App 125, 149; 867 NW2d 884 (2015) (quotation marks and citation omitted).]

Here, plaintiffs argue that the probate court erred by determining that the presumption of undue influence had not been shown and that defendant was entitled to summary disposition.

With respect to the first prong, the phrase "confidential or fiduciary relationship" is a legal term of art. *In re Karmey Estate*, 468 Mich at 74. Our Supreme Court has explained that this term is a broad one. *Id*. at 74 nn 2 & 3; *Van't Hof v Jemison*, 291 Mich 385, 393; 289 NW 186 (1939). A confidential or fiduciary relationship is one that is "founded on trust or confidence reposed by one person in the integrity and fidelity of another," and "the rule embraces both technical and fiduciary relations, and those informal relations which exist whenever one man trusts in and relies upon another." *Van't Hof*, 291 Mich at 393 (quotation marks and citation omitted).

Here, there was record evidence that Carolynn entrusted defendant with paying all of her bills and added defendant to her checking account to facilitate this task. Accordingly, defendant was authorized to write and sign checks from this account without needing any further permission from Carolynn. Moreover, defendant was entrusted with Carolynn's Social Security number and assisted Carolynn with the process of rolling over Gary's retirement account funds into a newly created IRA. Defendant's assistance with respect to the IRA included suggesting to Carolynn what bank to go to for a newly created IRA, helping with paperwork, driving Carolynn to both meetings at the bank, and sitting through most, if not all, of these two meetings. A jury could reasonably find from this evidence that there was a confidential or fiduciary relationship between Carolynn

-4-

and defendant based on the trust and confidence Carolynn placed in defendant with respect to her financial affairs. *Van't Hof*, 291 Mich at 393 (concluding that there was a confidential or fiduciary relationship where the decedent had placed her trust in her friend to handle her bank accounts and act "solely as her agent in these transactions").

Next, being named the sole beneficiary of the account worth over $200,000 clearly constitutes a benefit. *In re Gerald L Pollack Trust*, 309 Mich App at 149. Finally, although defendant appeared to deny having specifically discussed the beneficiary issue with Carolynn, she seemingly admitted in her deposition to having discussed the IRA generally with Carolynn. Given the record evidence regarding the amount of time defendant and Carolynn spent together and viewing the evidence in a light most favorable to plaintiffs, a jury could reasonably find that defendant had the opportunity to influence Carolynn's decision on who to name as the beneficiary of the IRA. *Id.*

It is important to bear in mind that when considering a motion for summary disposition under MCR 2.116 (C)(10), the primary function of the trial court is to "consider all evidence submitted by the parties in the light most favorable to the party opposing the motion," and grant the motion only if "there is no genuine issue of material fact." *El-Khalil*, 504 Mich at 160. "It is well settled that a trial court may not make findings of fact or weigh credibility in deciding a motion for summary disposition." *In re Peterson Estate*, 193 Mich App 257, 261; 483 NW2d 624 (1991). "Whether the presumption of undue influence is rebutted is a question to be resolved by the finder of fact." *Id.* Here, the probate court erred by making impermissible findings of fact in the context of a motion for summary disposition in order to decide that there was no evidence of undue influence. The record evidence, when viewed in a light most favorable to plaintiffs, established that questions of material fact existed whether defendant obtained her status as beneficiary of the IRA through undue influence over Carolynn.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Plaintiffs having prevailed is entitled to costs. MCR 2.119(A).

/s/ Anica Letica
/s/ Stephen L. Borrello
/s/ Michael J. Riordan